**Nos. 2023-1719, -1721**

# United States Court of Appeals for the Federal Circuit

STRATOSAUDIO, INC.,

*Appellant*,

*v.*

HYUNDAI MOTOR AMERICA,

*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-01267

STRATOSAUDIO, INC.,

*Appellant*,

*v.*

VOLKSWAGEN GROUP OF AMERICA, INC.,

*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00721

**APPELLEE VOLKSWAGEN'S RESPONSE BRIEF**

October 25, 2023

[counsel on next page]

Michael D. Specht
Daniel Yonan
Ryan C. Richardson
Richard A. Crudo
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K Street NW
10th Floor
Washington, DC 20005
(202) 371-2600

*Counsel for Appellee Volkswagen Group of America, Inc.*

## REPRESENTATIVE PATENT CLAIM

Claim 9 of Appellant StratosAudio, Inc.'s U.S. Patent No. 8,166,081 is representative for purposes of this appeal:

> 9. A system for combining multiple media comprising:
>
> a first receiver module configured to receive at least a first media content and data enabling the identification of a specific instance of the first media content from a first broadcast medium;
>
> a second receiver module configured to receive at least a second media content and uniquely identifying data specific to at least the second media content, the second media content received discretely from the first media content;
>
> an output system configured to present concurrently the first media content and the second media content on an output of the first receiver module or the second receiver module;
>
> an input module configured to receive at least a response input responsive to the second media content; and
>
> a transmitting module configured to transmit a response message having at least the uniquely identifying data specific to the second media content to a computer server.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1719, 1721

**Short Case Caption** StratosAudio, Inc. v. Hyundai Motor America

**Filing Party/Entity** Volkswagen Group of America, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/25/2023

Signature: /s/ Richard A. Crudo

Name: Richard A. Crudo

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Volkswagen Group of America, Inc. | | Volkswagen AG |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Shearman & Sterling LLP David J. Cooperberg | Shearman & Sterling LLP Thomas R. Makin | Sterne, Kessler, Goldstein & Fox - Daniel S. Block |
| Shearman & Sterling LLP Eric S. Lucas | Sterne, Kessler, Goldstein & Fox - Timothy L. Tang | |
| Shearman & Sterling LLP Mark A. Hannemann | Sterne, Kessler, Goldstein & Fox - Wenhao Xiong | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES .......... ix
INTRODUCTION .......... 1
STATEMENT OF THE ISSUES .......... 5
STATEMENT OF THE CASE AND FACTS .......... 6
I. TECHNOLOGY BACKGROUND .......... 6
A. StratosAudio's '081 Patent .......... 6
1. The Specification .......... 7
a. A Single Device for Receiving and Outputting Media Content .......... 7
b. Concurrently Presenting Media Content on an Output .......... 9
c. Identifying a Specific Instance of the First Media Content .......... 11
2. Independent Claim 9 .......... 12
B. DeWeese .......... 15
II. PROCEDURAL HISTORY .......... 19
A. A Board Majority Construes the "Output System" Limitation to Require a Single Output and Finds that DeWeese Discloses that Limitation. .......... 20
B. The Unanimous Board Finds that DeWeese Discloses the Remaining Claim Limitations. .......... 22
SUMMARY OF THE ARGUMENT .......... 24
STANDARDS OF REVIEW .......... 27
ARGUMENT .......... 28
I. THE BOARD CORRECTLY CONSTRUED THE "OUTPUT SYSTEM" LIMITATION. .......... 28
A. The Majority Correctly Determined that the "Output System" Limitation Requires a Single Output. .......... 29
B. StratosAudio's Contrary Arguments, to the Extent They Can Be Understood, Lack Merit. .......... 34

1. StratosAudio's and the Dissent's "Two Output" Construction Is Based on an Atextual Reading of the Claim and Conflicts with the Specification. ....36

2. StratosAudio's Narrower "Two Device" Construction Is Waived and, In Any Event, Improperly Reads Limitations into the Claims. ....39

C. StratosAudio Does Not Dispute that DeWeese Discloses the "Output System" Limitation Under the Majority's Construction. ....43

D. DeWeese Discloses the "Output System" Limitation Even Under the Dissent's "Two Output" Construction. ....46

II. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT DEWEESE DISCLOSES THE "SPECIFIC INSTANCE" LIMITATION. ....48

A. The Board's Finding that DeWeese's Program Guide Data Identifies Specific Television Programs Is Supported by DeWeese's Disclosure and Volkswagen's Expert Testimony. ....49

B. StratosAudio's Contrary Arguments Are Vague, Under-Developed, and, in Any Event, Wrong. ....51

1. StratosAudio's "Occurrence" Constructions Are Wrong and, in Any Event, Satisfied by DeWeese. ....53

2. StratosAudio's Narrower "Dynamically Determined" and "Unique Serial Number" Constructions Are Also Unavailing. ....55

III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT DEWEESE DISCLOSES THE "FIRST" AND "SECOND" "RECEIVER MODULE" LIMITATIONS. ....61

A. The Board's Finding that DeWeese's Set-Top Box and DOCSIS Modem Satisfy the "First" and "Second" "Receiver Module" Limitations Is Supported by DeWeese's Disclosure and Volkswagen's Expert Testimony. ....61

B. StratosAudio's Contrary Arguments Misapprehend Both the Factual Record and the Law. ....62

1. The Board Did Not Find that DeWeese's DOCSIS Modem Satisfies Both the "First" and "Second" "Receiver Module" Limitations. ....63

2. The Law Does Not Categorically Require Multiple Claim Limitations to Be Satisfied by Separate Prior-Art Components. ....................65

CONCLUSION ....................69

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*,
473 F.3d 1196 (Fed. Cir. 2007) ....................68

*Acoustic Technology, Inc. v. Itron Networked Solutions, Inc.*,
949 F.3d 1366 (Fed. Cir. 2020) ....................59

*ACTV, Inc. v. Walt Disney Co.*,
346 F.3d 1082 (Fed. Cir. 2003) ....................41

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
616 F.3d 1283 (Fed. Cir. 2010) ....................37

*Agarwal v. Morbark, LLC*,
2022 WL 2092774 (Fed. Cir. 2022) ....................52

*Ancora Technologies, Inc. v. Apple, Inc.*,
744 F.3d 732 (Fed. Cir. 2014) ....................42

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012) ....................60

*Applied Medical Resources Corp. v. United States Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006) ....................69

*Baran v. Medical Device Technologies, Inc.*,
616 F.3d 1309 (Fed. Cir. 2010) ....................43

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................65, 66

*Best Medical International, Inc. v. Elekta Inc.*,
46 F.4th 1346 (Fed. Cir. 2022) ....................51

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
320 F.3d 1339 (Fed. Cir. 2003) ....................54

*Bot M8 LLC v. Sony Interactive Entertainment LLC*,
2023 WL 5606978 (Fed. Cir. 2023) ....................................................................67

*CCS Technology, Inc. v. Panduit Corp.*,
778 F. App'x 947 (Fed. Cir. 2019) ....................................................................38

*Chamberlain Group, Inc. v. One World Technologies, Inc.*,
944 F.3d 919 (Fed. Cir. 2019) ..........................................................................28

*Cisco Systems, Inc. v. Egenera, Inc.*,
IPR2017-01341, Paper 10 (P.T.A.B. 2017).........................................................67

*Comcast Cable Communications, LLC v. Promptu Systems Corp.*,
838 F. App'x 551 (Fed. Cir. 2021) ....................................................................66

*Consolo v. Federal Maritime Commission*,
383 U.S. 607 (1966)...........................................................................................28

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ...................................................................47, 55, 60

*Engel Industries, Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996) ..........................................................................66

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ........................................................................59

*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004) ........................................................................66

*Genuine Enabling Technology LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) ........................................................................54

*Google LLC v. Personal Audio, LLC*,
743 F. App'x 978 (Fed. Cir. 2018) ...............................................................27, 65

*In re Google Technology Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ...................................................................34, 40, 57

*Grace Instrument Industries, LLC v. Chandler Instruments Co.*,
57 F.4th 1001 (Fed. Cir. 2023) ........................................................................69

*Hewlett-Packard Co. v. Mustek Systems, Inc.*,
340 F.3d 1314 (Fed. Cir. 2003) ........................................................................60

*Hisense Co. v. Polaris PowerLED Technologies, LLC*,
IPR2020-01337, Paper 11 (P.T.A.B. 2021)......................................................67

*Hopkins Manufacturing Corp. v. Cequent Performance Products, Inc.*,
IPR2015-00613, Paper 9 (P.T.A.B. 2015)........................................................67

*HTC Corp. v. Cellular Communications Equipment, LLC*,
701 F. App'x 978 (Fed. Cir. 2017) ...................................................................66

*HTC Corp. v. IPCom GmbH & Co.*,
667 F.3d 1270 (Fed. Cir. 2012) ........................................................................30

*In re Hyatt*,
708 F.2d 712 (Fed. Cir. 1983) ..........................................................................37

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ........................................................................59

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ........................................................................42

*Kao Corp. v. Unilever United States, Inc.*,
441 F.3d 963 (Fed. Cir. 2006) ......................................................................2, 39

*In re Kelley*,
305 F.2d 909 (C.C.P.A. 1962) ..........................................................................65

*Knowles Electronics LLC v. Cirrus Logic, Inc.*,
883 F.3d 1358 (Fed. Cir. 2018) ........................................................................27

*Kyocera Senco Industrial Tools Inc. v. International Trade Commission,*
22 F.4th 1369 (Fed. Cir. 2022) .........................................................................69

*Lego Systems, Inc. v. MQ Gaming LLC*,
IPR2020-01446, Paper 14 (P.T.A.B. 2021)......................................................67

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ....................................................................*passim*

*Linear Technology Corp. v. International Trade Commission*,
566 F.3d 1049 (Fed. Cir. 2009) ....................65, 68

*Medicines Co. v. Mylan, Inc.*,
853 F.3d 1296 (Fed. Cir. 2017) ....................69

*Omega Engineering, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ....................54, 58

*Packers Plus Energy Services Inc. v. Baker Hughes Oilfield Operations, LLC*,
773 F. App'x 1083 (Fed. Cir. 2019) ....................47, 55, 60

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011) ....................27, 65, 68

*In re Qapsule Technologies, Inc.*,
759 F. App'x 975 (Fed. Cir. 2019) ....................58

*Rain Computing, Inc. v. Samsung Electronics America, Inc.*,
989 F.3d 1002 (Fed. Cir. 2021) ....................41

*Retractable Technologies, Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011) ....................31, 68

*Rodime PLC v. Seagate Technology, Inc.*,
174 F.3d 1294 (Fed. Cir. 1999) ....................65

*Roku, Inc. v. Universal Electronics, Inc.*,
63 F.4th 1319 (Fed. Cir. 2023) ....................28

*Schumer v. Laboratory Computer Systems, Inc.*,
308 F.3d 1304 (Fed. Cir. 2002) ....................30

*Shoes by Firebug LLC v. Stride Rite Children's Group, LLC*,
962 F.3d 1362 (Fed. Cir. 2020) ....................62

*Target Corp. v. Proxicom Wireless, LLC*,
2023 WL 6135787 (Fed. Cir. 2023) ....................60

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ....................36

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................................................................................27

*Toshiba Corp. v. Juniper Networks, Inc.*,
248 F. App'x 170 (Fed. Cir. 2007) ...............................................................30

*Versata Software, Inc. v. SAP America, Inc.*,
717 F.3d 1255 (Fed. Cir. 2013) ...........................................................34, 40

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) .......................................................................52

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...........................................................................30, 37

## STATEMENT OF RELATED CASES

There is no other appeal in or from the same proceeding that was previously before this or any other appellate court. However, StratosAudio's '081 patent is also at issue in *StratosAudio, Inc. v. Hyundai Motor America*, No. 2:22-cv-01712 (C.D. Cal.), and *StratosAudio, Inc. v. Volkswagen Group of America, Inc.*, No. 2:22-cv-10524 (E.D. Mich.), which are currently stayed. Additionally, StratosAudio's related patent—U.S. Patent No. 9,355,405—is at issue in a companion appeal pending before this Court. *See StratosAudio, Inc. v. Volkswagen Grp. of Am., Inc. & Hyundai Motor Am.*, Appeal No. 2023-1720 (Fed. Cir.). Those cases could directly affect or be directly affected by the Court's decision here.

## INTRODUCTION

StratosAudio's '081 patent is broad in scope. Challenged claim 9 recites an "output system" for concurrently presenting two types of media content on an output associated with one of two receiver modules. The claim is purely functional in nature—it recites "modules" (instead of "devices"), which the specification states can be a collection of software, hardware, and/or firmware, and which "can be combined with other modules or divided into sub-modules." Appx158-159(6:47-7:8). DeWeese contains a similarly broad disclosure. It describes a system for concurrently presenting two types of media content (television programming and real-time chat messages) received by two receiver modules (a set-top box and a DOCSIS modem) on an output of at least one of the modules (a television screen having multiple distinct display areas). This is all that claim 9 of the '081 patent requires.

The Board agreed. Carefully and thoroughly evaluating both sides' expert testimony, the Board consistently found Volkswagen's evidence regarding what DeWeese discloses to a skilled artisan more persuasive, expressly crediting Volkswagen's expert at every turn. *See, e.g.*, Appx73; Appx109-111; Appx113. The Board thus found that DeWeese anticipates the challenged claims, and, in so ruling, rejected StratosAudio's repeated attempts to avoid an anticipating finding by reading limitations into the claim. *See, e.g.*, Appx67; Appx109-110; Appx112-

113. The Board's findings on this score are entitled to deference under the substantial evidence standard of review that applies here.

StratosAudio's challenge to the Board's anticipation ruling is—at the risk of understatement—opaque. To start, StratosAudio's arguments are severely under-developed, most comprising just a couple pages of discussion and analysis.[1] And, for the most part, those arguments are vague as to how StratosAudio believes the Board erred and how the result would be any different had the Board done what StratosAudio urges here. Still further, StratosAudio raises arguments that it forfeited by not raising—and, in some cases, by *affirmatively disclaiming*—below. To the extent StratosAudio's arguments can be deciphered, they lack merit. The Board's ruling should be affirmed.

StratosAudio's principal allegation of error is that the Board majority misconstrued the "output system" limitation ("an output system configured to present concurrently the first media content and the second media content on an output of the first receiver module or the second receiver module") to require only a single output. StratosAudio is unclear as to whether it believes that the limitation requires two *outputs* or two *devices*. Regardless, both constructions fail.

---

[1] The bulk of StratosAudio's "analysis" appears in the background section of its brief. *But see Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 973 n.4 (Fed. Cir. 2006) (arguments made only in background section are waived).

StratosAudio's "two output" construction fails because it is based on an incorrect reading of the limitation's plain language. Basic grammar dictates that the word "or" modifies its nearest referent ("an output"), meaning that the limitation requires only a single output that is associated with *either* the first receiver module *or* the second receiver module. StratosAudio's contrary reading (adopted by the dissent) would unnaturally read the word "or" as modifying the far-removed phrase "present concurrently," meaning that the output system must present media content on either of two distinct outputs, one for each module. That reading is not only highly atextual, it conflicts with specification passages describing a *single output* presenting the media content and describing modules embedded in devices that do not have any output at all. It is undisputed, moreover, that DeWeese satisfies the "output system" limitation under the majority's construction. And, in any event, DeWeese also satisfies StratosAudio's "two output" construction, as each of DeWeese's receiver modules contains its own logical output (a separate region of a display screen).

StratosAudio's "two device" construction also fails. That construction is waived: StratosAudio conceded below that "[a] *single device* could practice" challenged claim 9 as long as it has two outputs. Appx2724 (emphasis added). The construction is also wrong: nothing in claim 9 requires more than one device (in contrast to other independent claims, which require a "plurality of devices").

Neither does the specification, which describes a single device concurrently presenting the media content.

StratosAudio's secondary arguments fare no better. With regard to the "specific instance" limitation ("data enabling the identification of a specific instance of the first media content"), StratosAudio is all over the map. Despite never having presented a construction for this limitation below, StratosAudio seems to argue that the claimed data must identify a particular "occurrence" of a program. StratosAudio even goes so far as to argue that the data must *distinguish* between multiple occurrences. But the intrinsic record does not support such constructions and, in any event, DeWeese satisfies them—DeWeese's program guide data conveys listing information (such as program times, channels, titles, descriptions, etc.) that is updated and transmitted to the user in real-time and that enables the user to identify a specific occurrence of a television program (and, indeed, to distinguish one occurrence from others). StratosAudio elsewhere seems to advance even *narrower* constructions requiring the claimed data to be "dynamically determined" or comprise a "unique serial number." But those constructions also fail—the former is forfeited and both improperly read limitations into the claims.

Finally, with regard to the "first" and "second" "receiver module" limitations, StratosAudio contends that the Board improperly found that a single

component in DeWeese (a DOCSIS modem) satisfies both limitations. Here, StratosAudio gets both the facts and the law wrong. The Board never made such a finding, and even if it had, the law establishes that a single element in a prior-art reference can satisfy multiple claim limitations.

Without its mischaracterizations of the Board's findings and unduly narrow construction of the "output system" limitation, StratosAudio is left with nothing more than a disagreement with the Board's factual findings. The Board's findings are certainly supported by substantial evidence; indeed, they are entirely correct. The Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether, consistent with the plain claim language and specification, the Board majority correctly construed the "output system" limitation to require just a single output associated with either the first receiver module *or* the second receiver module, and whether substantial evidence supports the majority's finding that DeWeese satisfies that construction.

2. Whether substantial evidence supports the Board's finding that DeWeese discloses the "specific instance" limitation, where DeWeese's program guide data includes television program listing information (such as program times, channels, titles, descriptions, etc.) that is updated and transmitted to the user in

real-time and that identifies a specific instance of a television program (e.g., the episode title, channel, time, etc.).

3. Whether substantial evidence supports the Board's finding that DeWeese discloses the "first" and "second" "receiver module" limitations, where DeWeese's set-top box receives television programming (the "first media content"), while DeWeese's DOCSIS modem receives real-time chat messages (the "second media content").

## STATEMENT OF THE CASE AND FACTS

### I. TECHNOLOGY BACKGROUND

#### A. StratosAudio's '081 Patent

The '081 patent is directed to a "media enhancement system" that associates one type of media content (e.g., an advertisement) with another (e.g., a song) and concurrently presents both to a user on a device (e.g., a smartphone or television).[2] Appx140(Abstract); Appx156(1:18-20); Appx157(3:8-12); Appx159(8:44-48). By associating an advertised product with a particular song or artist—both on the device's output and in the minds of consumers—the claimed system purports to make advertising more effective. Appx156(1:31-34); Appx157(3:23-26).

[2] The '081 patent is the grandparent of the '405 patent at issue in the companion appeal; the patents share a specification.

For example, the system might associate an advertisement for a Kansas City Chiefs jersey with a Taylor Swift music video and play the video on a television screen while presenting the advertisement as a picture or scrolling text elsewhere on the screen. Appx156(1:22-34, 1:38-52); Appx157(3:27-47). While the '081 patent focuses on examples involving advertisements and songs, the patent makes clear that the claimed invention applies more broadly to *any* type of media content, including text messages, instant messages, television programming, and the like. Appx158(5:22-29); Appx159(8:24-28); Appx160(9:16-22).

### 1. The Specification

At issue here is the '081 patent's description of how: (a) a user device receives and outputs media content, (b) the content is presented to the user, and (c) the system identifies content using received data.

#### a. A Single Device for Receiving and Outputting Media Content

An embodiment of the '081 patent's claimed invention is shown in Figure 3 below (on the next page):




Appx147(Fig. 3) (annotated). A user device 4 (e.g., a smartphone) receives "first media content," such as a music video from a broadcast station, and "second media content," such as an advertisement from a third party, and presents both to the user on the device's output (e.g., display screen 450). Appx158(5:22-29); Appx159(8:44-57); Appx160(9:4-52, 10:29-32); Appx160-161(10:56-11:13, 12:37-60); Appx165(19:17-44, 20:37-46). Aside from mentioning in passing that the device receives the first and second media content through a "receiver" 455

such as an antenna, Appx164(18:56-61), the ’081 patent does not say which additional components or modules within the device are responsible for processing the received content, Appx3918-3919(22:10-23:3).

Figure 3 also shows an “ancillary device” 5 that can be used to retransmit media content at a later time or aid in purchasing advertised products. *See, e.g.*, Appx159-160(8:59-9:30). But the patent makes clear that the ancillary device is purely optional and that the primary user device is capable of receiving and presenting both the first and second media content on its own. *See, e.g.*, Appx157(4:50-63) (“[T]he device receives both the first media signal and the advertisement message and presents them to the user.”); Appx164-165(18:56-19:56); Appx166(22:48-51); *see also* Appx144-145(Figs. 1B, 1C); Appx150(Fig. 4A) (showing a single device having modules for receiving and presenting both media content); Appx4286-4289(¶¶25-28); Appx4292-4295(¶¶33-34) (Volkswagen’s expert relying on additional passages of the ’081 patent). In other words, the primary device has all the components and modules necessary to receive, process, and output the first and second media content.

#### b. Concurrently Presenting Media Content on an Output

Once the first and second media content have been received, the device concurrently presents the content to the user through the device’s output. For

example, as shown in Figure 3 above, the device can present the first media content within a particular region of a display screen (e.g., upper panel 451), while presenting the second media content within a different region of the screen (e.g., lower panel 452). Appx158(5:36-40); Appx165(19:11-56). Alternatively, the device can present the second media content "overlaid" on the first, as shown in Figure 3A below:

FIG. 3A




Appx148(Fig. 3A) (annotated); Appx165(20:37-60); *see also* Appx165(19:57-20:1).

When the user wishes to learn more about or purchase an advertised product, she can make a selection on the device's user interface, which causes the device to

transmit a fulfillment request to the advertiser. Appx160(10:29-37); Appx167(23:19-35).

**c. Identifying a Specific Instance of the First Media Content**

To associate one media content (e.g., an advertisement) with another (e.g., a music video), the patent describes using data (e.g., an "identifier") that denotes a "specific instance of a broadcast stream, transmission and/or media signal." Appx159(7:45-48); Appx161-162(12:66-13:22). The patent emphasizes that the identifier is "broad" in scope and can comprise "*any means* for identifying" a specific instance of media content. Appx159(7:45-8:9) (emphasis added). Further, the identifier need not *uniquely* identify a specific instance of particular content—rather it can be non-unique. Appx161(11:28-30) ("In other embodiments, the identifier is *not* a unique identifier." (emphasis added)); Appx163(15:1-3) ("Additionally, like the foregoing media signals, the related media signal 114 may also be associated with a unique *or non-unique* identifier 115." (emphasis added)).

The identifying data (whatever its form) is received by the device and used to search a database for various information about the associated media content such as "the location, the user device, the time of transmittal, the program and/or media content in the first media signal, the available options for responses to the user of the device, and/or other identifying characteristic information."

Appx161(11:38-46); *see also* Appx159(7:65-8:1); Appx162(13:13-22). The system can then use such information, for example, to determine which advertisements to associate with the identified content and to generate reports about system performance. Appx159(8:1-9); Appx171-172(32:45-33:12).

### 2. Independent Claim 9

StratosAudio focuses its appeal on independent claim 9 (reproduced below with relevant claim limitations annotated and emphasized):

> 9. A system for combining multiple media comprising:
>
> a **[“first receiver module” limitation]** *first receiver module configured to receive at least a first media content* and **[“specific instance” limitation]** *data enabling the identification of a specific instance of the first media content* from a first broadcast medium;
>
> a **[“second receiver module” limitation]** *second receiver module configured to receive at least a second media content* and uniquely identifying data specific to at least the second media content, the second media content received discretely from the first media content;
>
> **[“output system” limitation]** *an output system configured to present concurrently the first media content and the second media content on an output of the first receiver module or the second receiver module*;
>
> an input module configured to receive at least a response input responsive to the second media content; and
>
> a transmitting module configured to transmit a response message having at least the uniquely identifying data specific to the second media content to a computer server.

Appx173(35:22-41) (annotations and emphases added); Appx174 (certificate of correction).

Several aspects of claim 9 bear mentioning here. First, unlike the ’081 patent’s other independent claims, claim 9 is purely functional in nature. For example, whereas claims 1 and 12 recite definite structure (a “plurality of user *devices*”) for combining two types of media content, claim 9 recites first and second “receiver *modules*.” *Compare* Appx172(34:21-22) (claim 1), *and* Appx173(35:50-51) (claim 12), *with* Appx173(35:23-31) (claim 9). The specification does not mention the receiver modules at all, nor identify them in any of its figures.

Instead, the patent contains a broad definition of the term “module” standing alone. And that definition is purely *functional*: “the word ‘module,’ as used herein, refers to logic embodied in hardware and/or firmware, and/or to a collection of software instructions[.] … Generally, the modules described herein refer to *logical modules that may be combined with other modules or divided into sub-modules* despite their physical organization or storage.” Appx158-159(6:47-7:8) (emphasis added). In other words, the modules recited in the “first” and “second” “receiver module” limitations and the “output system” limitation are logical—not structural—and can be “combined” with one another, can be “sub-modules” of one another, and can reside in a single device.

Second, the "output system" limitation does not expressly require each receiver module to have its own output. Rather, it states that an output system must be configured to concurrently present the first and second media content on "an output of the first receiver module *or* the second receiver module." Appx173(35:32-35) (emphasis added). And, notably, some modules can be embedded in devices (e.g., transceivers) that do not have outputs. Appx159(8:44-50). Thus, claim 9 is broad enough to cover a single device containing two modules, as long as one of the modules has the requisite output.

Finally, the "specific instance" limitation[3] is likewise broad in scope and recites "data enabling the identification of a specific instance of the first media content from a first broadcast medium." Appx173(35:24-26). This breadth is consistent with the specification, which, as explained above, states that the identifying data can comprise "any means for identifying" a specific instance of media content. Appx159(7:45-8:9). Accordingly, the limitation neither requires the claimed data to be dynamically determined nor comprise a serial number or some other type of unique identifier.

[3] A slight variation of this limitation is also recited in the '405 patent at issue in the companion appeal.

**B. DeWeese**

StratosAudio concedes (at 2) that it "did not invent concurrent display" of media content. Volkswagen agrees, and, in fact, DeWeese (Appx3795-3843) discloses the very system claimed in the '081 patent. Like the patent, DeWeese describes a media-enhancement system that associates one type of media content (e.g., a television program) with another (e.g., real-time chat messages) and concurrently presents both to a user on a single device. Appx3832(¶002).

**1.** An example of DeWeese's system is shown below:




*FIG. 1A*

Appx3796(Fig. 1A) (annotated); Appx3795(Abstract); Appx3828(¶0002). DeWeese's system includes a user device 30 (television) and two modules for receiving, processing, and presenting media content to the user device: (1) a set-top box 26, and (2) a DOCSIS modem (described in DeWeese but not labeled in Figure 1A). Appx3831(¶0059); Appx3831-3832(¶0066).

The set-top box receives a television program from a broadcast distributor, while the DOCSIS modem—i.e., a standard type of modem that delivers Internet data over a coaxial cable network[4]—receives real-time chat messages about the program from a chat server. Appx3830-38931(¶¶0058-0059); Appx3725-3727(¶¶131, 133). The DOCSIS modem can (but need not) be incorporated in the set-top box. *See* Appx3831(¶0061) (noting that "some or all of the functions of the … chat set-top box application … may be … performed by chat equipment (e.g., a server, video bridge or audio bridge) operating at the television distribution facility" rather than at the set-top box itself); *see also* Appx3831(¶0059) (explaining that set-top box circuitry could be moved to "other suitable television

[4] "DOCSIS" refers to the "Data-Over-Cable Service Interface Specification," which describes a well-known standard interface used well before the '081 patent's 2008 priority date. Appx3726-3727(¶133); Appx3853-3855 (excerpts from DOCSIS standard).

equipment" such as "an advanced television receiver such as a high-definition tele vision (HDTV) receiver or other such television-based platform").

Even when incorporated in the set-top box, DeWeese's DOCSIS modem processes chat messages using components that are different than those used by the set-top box to process television programs. Appx4316(¶68). In other words, DeWeese's first (set-top box) and second (DOCSIS modems) receiver modules use separate circuitry and functionality to receive and process the first and second media content.

**2.** Once the first and second media content have been received, the user device "simultaneously" presents the content through the device's display screen 200:




FIG. 9

Appx3808(Fig. 9); Appx3835(¶0093). For example, like the embodiment shown in Figure 3 of the '081 patent, DeWeese's device can display television program 202 within one region 203 of the screen while displaying chat messages in another region 206.[5] Appx3828(¶0004); Appx3829(¶0015); Appx3835(¶0093); Appx3836(¶¶0102-0105). Additionally, like the embodiment show in Figure 3A of the '081 patent, DeWeese's chat messages can be displayed as an "overlay" of the television program in the same region of the screen. Appx3835(¶0093). Either way, DeWeese's system "allows users to simultaneously watch a television program and send real-time communications to other users," thus "directly link[ing]" the two types of media content. *Id.*

**3.** Also like the '081 patent, DeWeese's system identifies media content using received data. In particular, DeWeese uses an "interactive television program guide" that "allows users to view television program listings on their televisions." Appx3828(¶0009). The guide includes "television program listings data such as program times, channels, titles, descriptions, etc." stored in a database (element 14 in Figure 1A). Appx3830(¶¶0051, 0053, 0055). And, notably, DeWeese makes clear that the guide can be distributed to the set-top box "continuously (in real-

---

[5] DeWeese also teaches that advertisement 201 can be presented to the user via the display screen. Appx3835(¶0093). That advertisement, however, is not relevant to Volkswagen's invalidity challenge.

time)" so that the guide reflects updated television program listings and times. Appx3831(¶0060); Appx4313-4314(¶0063).

In short, DeWeese's system associates two different types of media content, concurrently presents them on an output of a user device, and identifies specific instances of particular media content.

## II. Procedural History

In response to an infringement suit, Volkswagen filed an IPR petition challenging claims 9-11 and 23 of the '081 patent as, among other things, anticipated by DeWeese. Appx2318-2345; *see also* Appx2667-2676; Appx2685-2693.

DeWeese's set-top box and DOCSIS modem satisfy the "first" and "second" "receiver module" limitations, Volkswagen argued, because those components receive and process television programs (the "first media content") and chat messages (the "second media content"), respectively. Appx2322-2329; Appx3719-3726(¶¶122-131); Appx2670-2674; Appx2687-2689; Appx4281-4290(¶¶15-29); Appx4314-4316(¶¶64-68). Further, Volkswagen argued that DeWeese satisfies the "output system" limitation because DeWeese concurrently presents both the first and second media content on an output—i.e., a television display screen having multiple dedicated regions for displaying the media content—of at least one of the modules. Appx2331-2333; Appx3727-3729(¶¶136-139); Appx2667-2676;

Appx2689-2690; Appx4278-4295(¶¶9-35); Appx4316-4318(¶¶69-71); Appx2809-2825.

Finally, Volkswagen argued that DeWeese's program guide data satisfies the "specific instance" limitation because the guide is used by the set-top box to identify specific television programs being broadcast on specific dates, times, and channels, including television programs currently being broadcast. Appx2322-2324; Appx3719-3721(¶¶122-124); Appx2685-2687; Appx4311-4314(¶¶59-63)

### A. A Board Majority Construes the "Output System" Limitation to Require a Single Output and Finds that DeWeese Discloses that Limitation.

**1.** Starting with the "output system" limitation, a Board majority agreed with Volkswagen that the limitation requires only a single output capable of concurrently presenting the first and second media content. Appx70-74. Evaluating the plain claim language, and consistent with the well-understood meaning of the word "or," the majority held that an output need only be associated with *either* the first receiver module "*or*" the second receiver module, but not both. Appx71-72.

The majority noted, moreover, that its construction is consistent with the specification. While the specification does not disclose the recited "output system," it does describe a single "output module" that can output both the first and second media content. Appx72 (citing Appx156(2:2-5)). The majority found that the patent's description of the "output module" is consistent with the claim language,

which merely requires the "output system" to include "an output of the first receiver module *or* the second receiver module," and with the testimony of Volkswagen's expert Dr. Williams, who "point[ed] out numerous examples described in the '081 Patent where different media content are presented concurrently on a single device's output," Appx72 (citing Appx4290-4295(¶¶30-35)).

The majority also determined that its construction is consistent with the patent's definition of "module" as being combinable with other modules. Appx73 (citing Appx158(6:47-49)). Again crediting Dr. Williams, the majority reasoned that if the receiver modules need not be separate physical structures, it follows that even if each module were to have its own output, "their outputs may not necessarily be separate physical structures either." *Id.* (citing Appx4320(¶75)). Thus, the two modules can share a single physical output. *Id.*

Based on that construction, the majority found that DeWeese satisfies the "output system" limitation because DeWeese's system has a television display screen (the claimed output) that is configured to concurrently present a television program (the "first media content") and chat messages (the "second media content"). Appx113-117 (citing Appx4317-4318(¶¶70-71)).

**2.** Judge Arbes dissented. In his view, the "output system" limitation requires two outputs—that is, two modules, each having its own output—as

StratosAudio had argued. Appx127-128; Appx130-131. Employing an atextual reading of the limitation, the dissent determined that the word "or" modifies the manner in which the content is concurrently presented rather than which module must possess the claimed output. Appx127. To support that reading, the dissent relied on specification passages describing the optional ancillary device having its own output that can operate in conjunction with the primary device to receive and process media content. Appx129. Notably, however, the dissent did *not* find that the limitation requires two *devices*. Nor did StratosAudio make such an argument. To the contrary, StratosAudio acknowledged that "[a] single device could practice Claim 9" as long as it has two outputs. Appx2724; *see also* Appx3991(95:16-18).

Turning to the prior art, the dissent determined that DeWeese does not satisfy StratosAudio's construction because DeWeese contains only a single output—namely, its television display screen. Appx131. But in so finding, the dissent assumed that the modules' outputs must be separate and distinct from one another even though the unanimous Board found that the modules themselves need not be. Appx67-70. Accordingly, Judge Arbes would have upheld the claims.

### B. The Unanimous Board Finds that DeWeese Discloses the Remaining Claim Limitations.

The unanimous Board found that DeWeese satisfies the remaining claim limitations. As for the "specific instance" limitation, applying the term's plain-and-

ordinary meaning and crediting Dr. Williams' testimony, the Board found "that a person of ordinary skill in the art would have found that DeWeese's program guide data enables the identification of a specific instance of a television program." Appx113 (quoting Appx3720-3721(¶123); Appx4312-4314(¶¶60-63)). In so ruling, moreover, the Board rejected StratosAudio's implicit claim-construction argument requiring that the claimed data be "dynamically determined" before being transmitted to the set-top box, finding that there is no language in claim 9 that would require such a narrow interpretation. Appx112-113.[6]

Finally, the Board turned to the "first" and "second" "receiver module" limitations. Again crediting Dr. Williams' testimony, the Board found that DeWeese's set-top box and DOCSIS modem constitute the first and second receiver modules, respectively. Appx109-111 (citing Appx3726-3727(¶¶133-135); Appx4320(¶75)). In so ruling, the Board rejected StratosAudio's argument that the modules must be "separate and distinct" from one another, finding that the specification describes the modules as being "combin[able] with other modules." Appx109-110 (quoting Appx158(6:47-7:8)); *see also* Appx66-70. Thus, the Board

---

[6] Notably, StratosAudio's implicit construction was inconsistent with its representations in the Hyundai IPR, where it agreed that "no term requires explicit construction," Appx465, even after the Board admonished StratosAudio to make its implicit interpretations of certain claim terms explicit, Appx383 n.6.

concluded, the mere fact that DeWeese's DOCSIS modem "may be housed within DeWeese's set-top box" is irrelevant. Appx109-110.

Accordingly, the Board invalidated the challenged claims. This appeal followed.

## SUMMARY OF THE ARGUMENT

**I.** The Board majority's construction of the "output system" limitation as requiring just a single output—i.e., an output associated with either the first receiver module "or" the second receiver module—is correct and should be affirmed. That construction is consistent with the plain claim language, which uses the word "or" to modify its nearest referent ("an output"), thus conveying that the claimed output need only be associated with either the first receiver module or the second receiver module. The majority's construction is also consistent with the specification, which describes a device having only a single output that concurrently presents the received content, as well as an embodiment in which a module is embedded in a device (e.g., a transceiver) that does not have *any* outputs.

StratosAudio's competing construction is vague. In some places of its brief, StratosAudio argues (consistent with the dissent below) that the limitation requires two *outputs*—one for each module. But elsewhere, StratosAudio seems to argue that the limitation requires two *devices*. Both constructions fail. The first is based

on a highly atextual reading of the claims that improperly excludes the embodiment described in the specification in which a module is embedded in a device that does not have an output. The second is flatly inconsistent with StratosAudio's concession that "[a] *single device* could practice Claim 9," Appx2724 (emphasis added), and, in any event, improperly reads limitations into the claims.

StratosAudio does not dispute that substantial evidence supports the Board majority's finding that DeWeese satisfies the "output system" limitation under the majority's construction. And, in any event, DeWeese also satisfies the dissent's "two output" construction, as each of DeWeese's receiver modules contains its own logical output (a separate region of the display screen).

**II.** Substantial evidence supports the Board's finding that DeWeese satisfies the claims' "specific instance" limitation. Relying on Volkswagen's expert testimony, and applying the plain-and-ordinary meaning of the phrase "specific instance," the Board found that DeWeese's program guide data (e.g., program times, channels, titles, and the like) is the claimed "data enabling the identification of a specific instance of the first media content" because such data includes information identifying a specific instance of a television program.

Although unclear, StratosAudio's contrary arguments appear to be based on wide-ranging and inconsistent implicit constructions of the limitation. As an initial

matter, by failing to present a fully-developed claim-construction argument, StratosAudio has failed to preserve such an argument for this Court's review. In any event, StratosAudio's arguments fail on the merits. To the extent StratosAudio argues that the claimed data must identify an "occurrence" of a broadcast or distinguish one occurrence from others, those constructions are inconsistent with the intrinsic record, which nowhere uses the word "occurrence" in the context of the limitation at issue. In any event, DeWeese satisfies those constructions, as its program guide data identifies one occurrence of a television program (e.g., an episode of *Friends* airing at 2:00 pm ET on a Friday) and, indeed, distinguishes it from others (the same episode airing at 3:00 pm ET on a Monday).

To the extent StratosAudio urges even narrower constructions requiring the claimed data to be "dynamically determined" or comprise a "unique serial number," those constructions also fail—the latter is forfeited and both improperly read limitations into the claims. In any event, DeWeese satisfies StratosAudio's "dynamically determined" construction because DeWeese's program guide data is "continuously" transmitted to the set-top box and "in real-time." Appx3831(¶0060).

**III.** Finally, substantial evidence also supports the Board's finding that DeWeese satisfies the "first" and "second" receiver module limitations. Again crediting Volkswagen's expert testimony, the Board found that DeWeese's set-top

box and DOCSIS modem receive television programs (the "first media content") and chat messages about the programs (the "second media content"), respectively.

StratosAudio does not even try to challenge that finding. Instead, it challenges a finding the Board never made—i.e., that DeWeese's DOCSIS modem satisfies *both* the "first" and "second" receiver module limitations. Even if the Board had made such a finding (it did not), there would be nothing legally improper with such a finding. This Court's cases establish that a single element in the prior art can generally satisfy multiple claim limitations. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-1232 (Fed. Cir. 2011); *Google LLC v. Personal Audio, LLC*, 743 F. App'x 978, 985 (Fed. Cir. 2018). And, indeed, the '081 patent expressly states that the claimed modules "can be combined" into a single component. Appx159(7:5-7). Accordingly, StratosAudio's argument on this score fails as both a factual matter and a legal matter. The Court should affirm.

## STANDARDS OF REVIEW

Claim construction is a question of law that may involve underlying factual inquiries. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 333 (2015). Thus, the Board's construction of the "output limitation" is reviewed de novo, while its factual findings regarding extrinsic evidence are reviewed for substantial evidence. *Id.*; *Knowles Elecs. LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358, 1361-1362, 1364 (Fed. Cir. 2018). Anticipation, by contrast, is a pure question of fact that is

reviewed for substantial evidence. *Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 923 (Fed. Cir. 2019).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 923-924 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, even in cases where this Court concludes it might "have decided the factual dispute at hand differently than the Board did, it is not the province of this court to do so." *Roku, Inc. v. Universal Elecs., Inc.*, 63 F.4th 1319, 1326 (Fed. Cir. 2023).

## ARGUMENT

### I. THE BOARD CORRECTLY CONSTRUED THE "OUTPUT SYSTEM" LIMITATION.

The "output system" limitation recites a system configured to "present concurrently the first media content and the second media content *on an output of* the first receiver module *or* the second receiver module." Appx173(35:32-35) (emphasis added). As a matter of basic grammar, the limitation requires just a single output (associated with either the first or second receiver module, but not necessarily both), and just a single device. Indeed, the claim expressly recites "modules" (instead of "devices"), which the specification states can be a collection

of software, hardware, and/or firmware, and which "can be *combined* with other modules or divided into sub-modules." Appx158-159(6:47-7:8) (emphasis). The patent's breadth alone supports the majority's construction.

DeWeese is similarly broad in scope. DeWeese's system concurrently presents two types of media content (television programming and real-time chat messages) on an output (a television screen having multiple distinct display areas). Given the patent's and the prior art's breadth, StratosAudio's attempt to *narrow* the claim to exclude DeWeese and cover *only* two outputs (or two devices) is inappropriate. StratosAudio's construction also makes no sense given that the specification describes modules which have *no outputs*. The Court should thus reject StratosAudio's arguments and affirm the majority's construction.

### A. The Majority Correctly Determined that the "Output System" Limitation Requires a Single Output.

All agree that the "output system" limitation requires the capability to present media received from two receiver modules—the only question is whether the limitation requires two *outputs* (one for each module). The plain claim language resolves that question in Volkswagen's favor:

> an output system configured to present concurrently the first media content and the second media content on *an output of* the first receiver module *or* the second receiver module.

Appx173(35:32-35) (emphases added).

The limitation refers to "an output"—i.e., not necessarily more than one—of the first receiver module "or" the second receiver module. Given the close proximity of the phrases "an output" and "or," it is clear that the latter modifies the former. *Cf. HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1274-1275 (Fed. Cir. 2012) ("Modifiers should be placed next to the words they modify."); *accord Toshiba Corp. v. Juniper Networks, Inc.*, 248 F. App'x 170 (Fed. Cir. 2007); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012) (noting that a "modifier normally applies only to the nearest reasonable referent"). Further, the commonly-understood meaning of the word "or" suggests that "the items in the sequence are alternatives to each other." *Schumer v. Laboratory Comput. Sys., Inc.*, 308 F.3d 1304, 1311 (Fed. Cir. 2002); Scalia & Garner, *Reading Law* 116 (the word "'or' creates alternatives").

Accordingly, consistent with basic principles of grammar, the limitation requires that *an output* be associated with *either* one receiver *or* the other, but not necessarily both. Stated differently, the limitation requires only a single output—an output of the first receiver module or an output of the second receiver module—that can concurrently present the media content. That is exactly what the Board majority found. Appx71-72.

StratosAudio suggests (at 30) that the majority improperly read the phrase "or the second receiver module" out of the claim altogether, as if the limitation had

merely recited "present[ing] … media content … *on an output of a receiver module*." Not so. As the majority explained (at Appx71-72), the second receiver module must still exist and must receive the second media content; it just need not have its own separate physical output, let alone one that can concurrently present media content. And, contrary to StratosAudio's suggestion otherwise, the word "or" does work in the majority's construction: it makes clear that at least one of the two claimed receiver modules that received the media content (rather than some *other* module) has the claimed output that can concurrently present the media content. This is a meaningful limitation on the scope of the claim that, as described above, is supported by its plain language.

The majority's construction is also consistent with the specification. As an initial matter, the specification does not disclose the claimed "output system," let alone refer to an output "of" either the first or second receiver modules. *See, e.g.*, Appx156(1:53-63) (referring to the user device as "outputting" media content). Further, none of the figures restricts the output to any particular physical form. Thus, the notion that anything in the specification *limits* claim 9 to covering *only* two outputs is not credible. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." (cleaned up)).

And, in fact, the specification supports a broader construction. Consider, for example, Figure 3:




Appx147(Fig. 3) (annotated). The user's device 4 (a smartphone) contains (undisclosed) modules that receive first media content (a music video) and second media content (an advertisement), respectively. Appx159(8:44-57); Appx160(9:31-52, 10:29-32); Appx160-161(10:56-11:13, 12:37-60); Appx164(18:56-61). And, critically, the device can present both pieces of graphical content on *a single*

*output*—namely, the display screen 450. *See* Appx157(4:50-63) (stating that the primary user "device receives both the first media signal and the advertisement message and presents them to the user"); Appx164-165(18:56-19:56).

The same is shown in Figure 3A:

FIG. 3A




Appx148(Fig. 3A) (annotated); Appx165(20:37-60); *see also* Appx165(19:57-20:1). The majority's construction appropriately covers both of these preferred embodiments.

Further, the majority's construction makes sense when one considers that not every module even has an output. The '081 patent defines "module" broadly as "logic embodied in hardware and/or firmware, and/or to a collection of software instructions[.]" Appx158-159(6:47-7:8). Likewise, the patent explains that the

logical modules can be embedded in devices (e.g., transceivers) that do not have an output. Appx159(8:44-50). In that scenario, it would make little sense to read claim 9 as *requiring* two outputs, one for each module.

In sum, the plain claim language and specification support the Board's construction, which correctly requires a single output.

### B. StratosAudio's Contrary Arguments, to the Extent They Can Be Understood, Lack Merit.

StratosAudio asserts that the Board's construction is wrong but is non-committal as to what it believes the correct construction should be. In certain places of its brief, StratosAudio seems to embrace the dissent's view that the "output system" limitation requires two outputs, one of which must be capable of concurrently presenting the media content.[7] *See, e.g.*, Dkt. 18 ("BBr.") 25-26, 30

---

[7] StratosAudio's argument here is itself ambiguous. StratosAudio seems to suggest that each of the two outputs must be capable of concurrently presenting the media content. BBr. 31. But the dissent never went that far, and, in fact, StratosAudio disclaimed such a construction before the Board. *See* Appx2903(58:5-13) (StratosAudio's counsel stating at the oral hearing that "only one" output "has to have th[e] capability" to concurrently present media content); Appx3984(88:12-20) (StratosAudio's expert testifying that a two-output system in which only one output can concurrently present media content would fall within the scope of the claim); Appx2724 (StratosAudio's Sur-Reply: "Both outputs must exist, and at least one must support concurrent presentation."); Appx2738 (same). Thus, to the extent StratosAudio advances such a construction here, that construction is waived. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("Because Google failed to present these claim construction arguments to the Board, Google forfeited both arguments."); *cf. Versata Software,*

(arguing that "Judge Arbes was correct, and this Court should adopt his reasoning").

But elsewhere, StratosAudio seems to urge a different construction—i.e., that the "output system" limitation requires not just two outputs, but *two devices*. For example, StratosAudio asserts that the limitation requires *both* a primary user device *and* "an already-configured, alternative, extant *device* that … stands ready in the overall system" to concurrently present the first and second media content. *Id.* at 31 (emphasis added); *see also id.* (referring to "a mobile phone device" and "a car radio," and faulting Volkswagen for "not identify[ing] any alternative output *device* that stood ready and already-configured at the same time alternatively to perform that role" (emphasis added)). That construction is much narrower than the "two output" construction that StratosAudio argued for below and that the dissent adopted.

In any event, for the reasons explained below, neither of these constructions is correct.

---

*Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) (finding that patentee waived right to challenge construction to which it agreed).

### 1. StratosAudio's and the Dissent's "Two Output" Construction Is Based on an Atextual Reading of the Claim and Conflicts with the Specification.

The most natural reading of the "output system" limitation is that the word "or" modifies the phrase that immediately precedes it: "an output." Under that reading, there need only be a single output—i.e., one associated with *either* the first receiver module *or* the second receiver module.

Resisting this plain reading, StratosAudio insists that each receiver module must have its own output, and that the word "or" modifies the phrase "*present concurrently*" appearing far upstream. *See* BBr. 30; *accord* Appx127 (dissent concluding that "[t]he 'or' in claim 9 applies to the concurrent presentation" of the media content rather than "an output"). Thus, in StratosAudio's view, the claim reads as if it had been written as follows (with additions underlined):

> a first receiver module … <u>having a first output capable of concurrently presenting media content</u>,
>
> a second receiver module … <u>having a second output capable of concurrently presenting media content</u>;
>
> an output system configured to present concurrently<u>: (1)</u> the first media content and the second media content on ~~an~~ <u>the first </u>output of the first receiver module or <u>(2) the first media content and the second media content on the second output of </u>the second receiver module;

This construction is improper. To start, it impermissibly rewrites the claims to import limitations found nowhere in the patent. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1321 (Fed. Cir. 2013) (rejecting

construction that would have "rewritten the claim language"); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations … into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Further, StratosAudio's reading is highly atextual and conflicts with basic grammar, including the rule that a modifier (here, "or") "normally applies only to the nearest reasonable referent" ("an output"). Scalia & Garner, *Reading Law* 152; *see In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts of English grammar.").

Still further, as explained above, the '081 patent describes certain devices (e.g., transceivers) that do not have any output at all. Appx159(8:44-50). Thus, to the extent one of the receiver modules is embedded in such a device, the module would not have its own physical output, let alone one that could concurrently present media content. StratosAudio's construction improperly excludes this embodiment. *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ("A claim construction that excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support." (cleaned up)).

To support its atextual reading of the claim, StratosAudio points to an embodiment described in the specification in which a primary device (e.g., a

smartphone) includes one output (a display screen), and an ancillary device (e.g., a car radio) includes a second output (speakers). BBr. 31 (citing Appx159(8:44-47, 8:58-60)). StratosAudio seems to conclude from this embodiment that claim 9 requires two outputs.

But the cited passage does not help StratosAudio. The ’081 patent makes clear that the ancillary device is *optional*. *See, e.g.*, Appx157(4:50-63) (stating that the primary device “receives both the first media signal and the advertisement message and presents them to the user”); Appx164-165(18:56-19:56); Appx166(22:48-51); *see also* Appx144-145(Figs. 1B, 1C); Appx150(Fig. 4A) (showing a single device having modules for receiving and presenting both media content); Appeal No. 2023-1720, Appx457 n.1 (StratosAudio acknowledging in companion IPR that the patent “refers to *optional* transmission to one or more ancillary device(s)” (emphasis added)). It is thus inappropriate to limit claim 9 to such an embodiment. *Liebel-Flarsheim*, 358 F.3d at 913; *see also CCS Tech., Inc. v. Panduit Corp.*, 778 F. App’x 947, 950 (Fed. Cir. 2019) (rejecting construction that would limit claims “to embodiments with [an] optional feature” described in the specification). Further, as explained above, even when an ancillary device is used, the patent makes clear that the media content can be presented on *a single output* (a smartphone’s display screen) that is associated with both the first and

second receiver modules. *See supra* pp.32-34. Accordingly, the patent's ancillary-device embodiment does not justify reading two outputs into the claim.[8]

Thus, to the extent StratosAudio argues that the Court should adopt the dissent's "two output" construction, that argument should be rejected, as the construction is based on a misreading of both the claim and the specification.

### 2. StratosAudio's Narrower "Two Device" Construction Is Waived and, In Any Event, Improperly Reads Limitations into the Claims.

StratosAudio's "two device" construction fares no better. Not only is that construction wrong on the merits, it is much narrower than the "two output" construction that StratosAudio proffered below and that the dissent adopted. It is waived.

In the IPR, StratosAudio argued that the "output system" limitation requires *two outputs* "with at least one output capable of presenting both the first and

---

8 StratosAudio seems to suggest in passing (and in the background section of its brief) that the Board's construction is undermined by the fact that a specification passage refers to the media content being presented to the primary device "and/or" the ancillary device, whereas the claim refers to presenting the content on an output of the first receiver module "or" the second receiver module. BBr. 12-13 (citing Appx162(14:27-31)). StratosAudio has waived this under-developed argument presented only in the background. *See Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 973 n.4 (Fed. Cir. 2006) (arguments made only in background section are waived). Even if the argument were to be considered, it is unavailing. The passage to which StratosAudio points is irrelevant, as it refers to presenting media content on an optional ancillary device, *not* on an output of either a first or second receiver *module*.

second media content concurrently." Appx2738 (emphasis added); *see also* Appx2625; Appx2723-2726; Appx2809-2825. StratosAudio never argued that the limitation required two *devices*. To the contrary, StratosAudio *acknowledged* that "[a] *single device* could practice Claim 9" as long as it has two outputs. Appx2724 (emphasis added); Appx2719; *see also* Appx2888(43:9-12) (StratosAudio's counsel agreeing during the oral hearing that claim 9 "does not require two devices"). StratosAudio's expert made that same concession during deposition. *See* Appx3991(95:16-18) ("Q. Okay. So it is possible for a single device to have two receiver modules? A. Yes."); Appx69. Nor did the dissent suggest that the claim requires two devices—rather, Judge Arbes adopted StratosAudio's argument that the claim requires "*two outputs*, one for each of the two receiver modules[.]" Appx130 (emphasis added).

Having affirmatively conceded that the claims do not require two devices, StratosAudio cannot now embrace a construction that imposes such a requirement. That construction is waived. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("Because Google failed to present these claim construction arguments to the Board, Google forfeited both arguments."); *cf. Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) (finding that patentee waived right to challenge construction to which it agreed).

Regardless, StratosAudio's construction fails on the merits. Indeed, the construction fails right off the bat, as neither the word "device" nor any structural variant thereof appears in claim 9. Rather, the claim is indisputably *functional* in nature. The claim recites receiver *modules*, which the specification defines as *logical*, not structural, components. In particular, the specification explains that a module "refers to logic embodied in hardware and/or firmware," and that such "logical modules … may be combinable with other modules or divided into sub-modules." Appx158-159(6:47-7:8). The Board reiterated this point throughout its decision, Appx68-70; Appx73; Appx117, and StratosAudio concedes it on appeal, BBr. 36-37 (acknowledging that "one module can be a subset of another module, and modules may be logical rather than physical"); *cf. Rain Comput., Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1006 (Fed. Cir. 2021) ("Module' is a well-known nonce word that can operate as a substitute for 'means.'").

This context is important, as it strongly suggests that the first and second receiver modules may exist within a single device, which undermines StratosAudio's contention that two devices are required. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms."). In fact, *other* claims in the patent expressly recite

multiple devices. Independent claims 1 and 12, for example, recite a "plurality of user *devices*" for combining two types of media content. Appx172(34:21-22) (claim 1); Appx173(35:50-51) (claim 12). Clearly, then, StratosAudio knew how to claim multiple devices when it intended to do so. The fact that it chose functional language in claim 9 ("modules" instead of "devices") strongly suggests that StratosAudio intended to claim something different—i.e., a system *not* limited to multiple devices. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms."); *see also Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 735 (Fed. Cir. 2014).

StratosAudio's construction also runs headlong into the specification, which, as explained above, describes a *single device* (e.g., a smartphone) having a single output that is capable of concurrently presenting both types of received media content. *Supra* pp.32-34. The Board noted, moreover, that Volkswagen's expert Dr. Williams provided "numerous" other examples in which the '081 patent describes a single device having both receiver modules. Appx72. He testified, for example, that the patent's figures consistently show a single device having multiple modules. *See* Appx4286-4295(¶¶25-35) (citing specification passages); Appx2813-2814.

The specification does, to be sure, describe an embodiment in which the user device operates in conjunction with an ancillary device, as explained above. *See supra* pp.37-38. But, as also explained above, the ancillary device is optional. *Id.* Further, claims 1 and 12—which expressly recite "a plurality of devices"—were plainly intended to cover that embodiment, and so there is no reason to *limit* claim 9 to that embodiment. *See Liebel-Flarsheim*, 358 F.3d at 913; *see also Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment.").

In sum, StratosAudio's "two device" construction is both waived and wrong on the merits. This Court should reject it.

### C. StratosAudio Does Not Dispute that DeWeese Discloses the "Output System" Limitation Under the Majority's Construction.

StratosAudio does not dispute that substantial evidence supports the Board's finding that DeWeese satisfies the "output system" limitation under the majority's construction. Nor can it, as DeWeese's disclosure is nearly identical to the '081 patent's.

Relying heavily on Dr. Williams's testimony, the Board found that DeWeese has two modules: (1) a set-top box that receives and processes television programming, and (2) a DOCSIS modem that receives and processes real-time chat messages. Appx102-117 (citing Appx3719-3729(¶¶122-139); Appx4312-

4314(¶¶60-63), Appx4317-4320(¶¶70-75)). The system also has an output (a television display screen) that concurrently presents both the first and second media content:




*FIG. 9*

Appx3808(Fig. 9); Appx3835(¶0093); Appx116-117. This is nearly identical to what the ’081 patent itself shows (on the next page):




Appx147(Fig. 3) (annotated); *see also* Appx148(Fig. 3A). If claim 9 reads on Figure 3, then it must also read on DeWeese, as the Board found.

In the end, DeWeese does exactly what is claimed and disclosed in the ’081 patent, and substantial evidence supports the Board’s finding on that score. Thus, if the Court agrees with the majority’s construction of the “output system” limitation, it should affirm the Board’s determination that DeWeese satisfies that limitation.

### D. DeWeese Discloses the "Output System" Limitation Even Under the Dissent's "Two Output" Construction.

Even if the Court were to find, as the dissent found, that the "output system" limitation requires two outputs, DeWeese would still satisfy the limitation.

As explained above, the '081 patent makes clear that one module can be combined with other modules or divided into sub-modules. *Supra* pp.41-43. Based on that disclosure, and relying on Dr. Williams' testimony, the Board majority determined that because the receiving modules need not be "separate physical structures or components, it follows that their outputs may not necessarily be separate physical structures either, but may maintain their identity and distinction through the use of logic or software." Appx73 (citing Appx4320(¶75)); Appx117; *accord* Appx156(2:2-5) ('081 patent explaining that "an output module" can be "configured to output a primary media content from the first medial signal and output a secondary media content from the second media signal"). Thus, even if the "output system" limitation requires two outputs, the outputs need not be "separate physical structures"—i.e., they can overlap.

That is what DeWeese discloses. DeWeese's display screen presents media content from both the set-top box (the "first receiver module") and the DOCSIS modem (the "second receiver module"). *Supra* pp.43-45. Accordingly, DeWeese's display screen is logically associated with—i.e., outputs media content received

from—both modules. Appx2824. And, under the Board's finding that the outputs need not "be separate physical structures," it makes no difference that the screen is the same physical output for each module because the screen and its multiple dedicated regions for displaying the various received media content "maintain their identity and distinction through the use of logic or software." Appx73 (citing Appx4320(¶75)).

Volkswagen presented this argument below (at Appx2824), but the Board did not have occasion to expressly address it. This Court can address the argument in the first instance, however, because the conclusion that DeWeese satisfies the "output system" limitation even under a "two output" construction is the only permissible finding that can be made from the record. *See Corning v. Fast Felt Corp.*, 873 F.3d 896, 901-903 (Fed. Cir. 2017) (holding that "it is not necessary or appropriate to remand for the Board to reassess the evidence in light of the correct claim construction" where "there is only one possible evidence-supported finding"); *Packers Plus Energy Servs. Inc. v. Baker Hughes Oilfield Operations, LLC*, 773 F. App'x 1083, 1088 (Fed. Cir. 2019) (holding that the Court may consider alternative grounds for affirming the Board "where the issues raised do not require [the Court] to find facts in the first instance").

At the very least, if the Court adopts StratosAudio's "two output" construction, the Court should remand for the Board to address Volkswagen's argument in the first instance.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT DEWEESE DISCLOSES THE "SPECIFIC INSTANCE" LIMITATION.

Substantial evidence also supports the Board's finding that DeWeese's program guide data satisfies the "specific instance" limitation, which requires that the first receiver module receive "data enabling the identification of a specific instance of the first media content from a first broadcast medium." Appx173(35:24-26). StratosAudio fails to set forth a cogent theory for why the Board's well-reasoned finding should be overturned. Specifically, despite never proposing a construction for this term below, StratosAudio alludes to a claim-construction dispute without actually articulating the dispute or clearly stating what it believes the correct construction is.

To the extent StratosAudio argues that the claimed data must identify a particular "occurrence" of a broadcast or distinguish one occurrence from others, those constructions find no support in the intrinsic record. In any event, DeWeese's program guide data plainly satisfies those constructions because it identifies an occurrence of a television program and, indeed, distinguishes between multiple occurrences.

To the extent StratosAudio urges even narrower constructions requiring the claimed data to be "dynamically determined" or comprise a "unique serial number," those constructions also fail. The latter is forfeited and both improperly read limitations into the claims—indeed, the Board properly rejected StratosAudio's "dynamically determined" construction on that basis. In any event, DeWeese also satisfies StratosAudio's "dynamically determined" construction. The Court should affirm.

### A. The Board's Finding that DeWeese's Program Guide Data Identifies Specific Television Programs Is Supported by DeWeese's Disclosure and Volkswagen's Expert Testimony.

The Board's finding that DeWeese satisfies the limitation is straightforward and, more importantly, supported by substantial evidence.

As Dr. Williams explained, DeWeese's program guide data is the claimed "data enabling the identification of a specific instance of the first media content" because it includes information from which a user can identify a specific instance of a television program. Appx3720-3721(¶123); Appx4312-4314(¶¶60-63). The data comprises, for example, "television program listings data such as program times, channels, titles, descriptions," and the like. Appx3830(¶0053). The data is transmitted to the set-top box "continuously" and "in real-time," moreover, so that the data apprises the user of particular television programs that will be broadcast at any given time. Appx3831(¶0060); Appx3719-3720(¶122); Appx4312-4314(¶¶60-

63). For example, the program guide data might indicate that a particular episode of *Friends* is airing on the TBS channel at 9:00 pm ET on Wednesday. Thus, DeWeese's program guide data enables identification of a specific instance of a television program, just as the claim requires.

The Board agreed. Applying the limitation's plain-and-ordinary meaning, and expressly "credit[ing]" Dr. Williams' testimony, the Board determined that a skilled artisan "would have found that DeWeese's 'program guide data' enables the identification of a specific instance of a television program.'" Appx113 (quoting Appx3720-3721(¶123), citing Appx4312-4314(¶¶60-63)). And, notably, StratosAudio does not cite *any* evidence that would support a contrary finding.

Instead, StratosAudio asserts (at 32-33) that DeWeese's program guide data merely identifies a television *program*, not a specific instance of the program. StratosAudio contends that, by allegedly finding otherwise, the Board effectively read the "specific instance" limitation out of the claim. Not so. As explained above, DeWeese's program guide data does far more than merely identify a television program (e.g., *Friends*)—it identifies a *specific instance* of the program by, for example, identifying the particular episode, the time it is played, and on what channel (e.g., "The One with Football"; Season 3, Episode 9; 9:00 pm ET on Tuesday; TBS channel).

Thus, substantial evidence supports the Board's finding, as demonstrated by the Board's reliance on Volkswagen's expert testimony and DeWeese's own disclosure. *See Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1355 (Fed. Cir. 2022) (finding that the prior-art "references themselves and expert testimony" constitute substantial evidence supporting the Board's invalidity ruling).

### B. StratosAudio's Contrary Arguments Are Vague, Under-Developed, and, in Any Event, Wrong.

While StratosAudio alludes to an argument that "the Board misconstrued" the "specific instance" limitation "as a matter of law," BBr. 26, StratosAudio does not squarely present such an argument in its Statement of the Issues, *see id.* at 4 (Statement of Issues asking "[w]hether the Board erred to hold that DeWeese anticipated" claim 9). Nor did StratosAudio ever present a construction for this limitation below. *See* Appx465 (StratosAudio "agree[ing]" with Volkswagen that "no term requires explicit construction"); *see also* Appx383 n.6; Appx465 (StratosAudio asserting in the Hyundai IPR that no construction was necessary even after the Board admonished StratosAudio to make its implicit claim-construction arguments explicit).

Accordingly, StratosAudio acknowledges that the issue here is *factual* in nature and thus turns on whether substantial evidence supports the Board's finding that DeWeese discloses the "specific instance" limitation. *See* BBr. 28 (citing

caselaw for the proposition that "[w]hat a piece of prior art teaches presents a question of fact"). On *that* issue, StratosAudio plainly loses for the reasons described above. *See supra* Section II.A.

StratosAudio's vague allusions to claim construction, moreover, are not sufficient to preserve a claim-construction argument for this Court's review. *See Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 19 n.4 (Fed. Cir. 2012) (finding that party waived the ability to argue for a particular claim construction where, although it "alluded to the possibility that the trial court's claim construction was contrary to the patent's specification and prosecution history at times in its opening brief, it did not raise the issue in the 'Statement of the Issues'" and "cited no legal support for its claim construction 'arguments'"); *see also Agarwal v. Morbark, LLC*, 2022 WL 2092774, at *2 (Fed. Cir. 2022) ("Mr. Agarwal's perfunctory presentation of his claim-construction argument amounts to no presentation at all. We therefore deem any claim-construction argument from him waived (or rather, forfeited).").

In any event, StratosAudio's argument fails on its own terms, as StratosAudio nowhere says precisely what construction it believes the Board should have applied or how such a construction would lead to a different result. What little StratosAudio *does* say about the limitation's meaning, moreover, is under-developed and (once again) unclear.

On the one hand, StratosAudio cites dictionary definitions (which were never cited below and which post-date the priority date by fifteen years) for the proposition that the claimed data must identify a particular "occurrence" of a broadcast and differentiate between multiple occurrences. BBr. 32.

On the other hand, StratosAudio elsewhere seems to go even further, arguing that the claimed data must be "dynamically determined" at the broadcast facility before being transmitted to the user. *Id.* at 23. Still elsewhere, StratosAudio seems to suggest that the claimed data must comprise a "unique identifier" or "something akin to a unique serial number" that uniquely identifies each instance of a broadcast. *Id.* at 38; *see also id.* at 2, 9-12, 21, 33. Adding to the confusion, StratosAudio also suggests that the claimed data must be able to account for "breaking news" segments that interrupt regularly-scheduled programming. *Id.* at 33.

For the reasons explained below, StratosAudio's wide-ranging and inconsistent arguments are unavailing. They should be rejected.

### 1. StratosAudio's "Occurrence" Constructions Are Wrong and, in Any Event, Satisfied by DeWeese.

**a.** To the extent StratosAudio argues that the "specific instance" limitation requires the claimed data to identify an "occurrence" of a broadcast and/or distinguish between multiple occurrences, those constructions find no

support in the intrinsic record. The ’081 patent says nothing about identifying an occurrence of the first media content, let alone *distinguishing* between occurrences. Indeed, StratosAudio cites nothing from the patent itself to support its constructions. And, as the Board found in its Final Written Decision in the Hyundai IPR, StratosAudio did not direct the Board “to anything in the record that would require restricting the claim term ‘identification’ to distinguishing between two or more instances of the same media content, as Patent Owner argues.” Appx24; *see Omega Eng’g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (“[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.”).

Given the lack of intrinsic supports for its constructions, StratosAudio relies (at 32) solely on dictionary definitions which were never cited below and thus should not be considered here. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1346 (Fed. Cir. 2003) (“We will rarely give weight to arguments that rely on sources brought forth for the first time on appeal.”). Even if relevant, those definitions cannot somehow displace the plain-and-ordinary meaning of “specific instance” that the Board applied. *See Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022) (cautioning that “[e]xtrinsic evidence is to be used for the court’s understanding of

the patent, not for the purpose of varying or contradicting the terms of the claims" (cleaned up)).

**b.** Regardless, DeWeese plainly satisfies StratosAudio's "occurrence" constructions. Indeed, StratosAudio does not explain how its constructions differ from what DeWeese discloses. DeWeese's program guide includes data such as program times, channels, titles, and the like, which collectively identify an occurrence of a television program (e.g., an episode of *Friends* being broadcast at 9:00 pm on Tuesday on TBS) and, indeed, distinguish it from other occurrences (e.g., a different episode being broadcast at a different time or day, or on a different channel). *Supra* Section II.A.

Accordingly, even if the Court credits StratosAudio's under-developed claim constructions, it should affirm. *See Corning*, 873 F.3d at 901-903; *Packers Plus*, 773 F. App'x at 1088. At the very least, if the Court adopts StratosAudio's constructions, the Court should remand for the Board to address Volkswagen's argument on this score.

#### 2. StratosAudio's Narrower "Dynamically Determined" and "Unique Serial Number" Constructions Are Also Unavailing.

**a.** To the extent StratosAudio urges even narrower constructions—requiring that that the claimed data be "dynamically determined" before being transmitted or comprise a "unique serial number"—those constructions also fail.

Even aside from being severely under-developed on appeal, those constructions improperly read limitations into the claims.

The language of claim 9 contains no indication that "specific instance" should be "dynamically determin[ed]," and neither does the specification. Rather, as explained above, the specification says that "*any means* for identifying" a specific instance of media content may be used. Appx159(7:45-8:9) (emphasis added). In an attempt to overcome this problematic disclosure, StratosAudio cites (at 11, 32) to a patent application incorporated by reference in the '081 patent, which, at most, provides one "example" in which a broadcast scanning system generates a unique event identifier. Appx171(31:66-32:26). But the incorporated application does not help StratosAudio. Claim 9 of the '081 patent does not refer to a broadcast-scanning system or an identifier. Appx4312-4313(¶61). And, just like the '081 patent, the incorporated application defines the identifier as encompassing "any means" for identifying a specific instance. *Compare* Appx5150(5:44-49), *with* Appx159(7:45-8:9). Accordingly, the application simply provides one of many possible alternatives and is not a basis to limit claim 9 to a broadcasting-station embodiment.

StratosAudio's alternative argument that the claimed data must comprise a "unique identifier" akin to a "serial number," *see, e.g.*, BBr. 38, also fails. To start, it was never proffered below, and so it—like so many of StratosAudio's other

arguments—is forfeited. *See Google*, 980 F.3d at 863. It is also wrong on the merits. Neither the claims nor the specification mentions a "unique serial number," and claim 9 does not specify whether the "identification" is "unique" or "not unique." Moreover, as explained at length above, the specification states that the term "identifier" is "broad" in scope and can comprise "*any means* for identifying" a specific instance of media content, which would include DeWeese's program guide data. Appx159(7:45-8:9) (emphasis added). The identifier need not even *uniquely* identify the specific instance of particular content. Appx161(11:28-30) ("In other embodiments, the identifier is *not* a unique identifier." (emphasis added)); Appx163(15:1-3) ("Additionally, like the foregoing media signals, the related media signal 114 may also be associated with a unique *or non-unique* identifier 115." (emphasis added)). Thus, StratosAudio's suggestion that the claim requires a serial number to identify a specific instance of media content is belied by its own patent specification, and StratosAudio (once again) errs in reading such a limitation into the claim. *Liebel-Flarsheim*, 358 F.3d at 913.

In a last effort to establish that the Board's interpretation is wrong, StratosAudio conjures up a hypothetical scenario in which "breaking news" interrupts regularly-scheduled programming. BBr. 33. In that scenario, StratosAudio insists, DeWeese's program guide data would no longer be accurate. *Id.* But StratosAudio's speculation about what would happen if there were

"breaking news" is irrelevant because nothing in the claim requires the data to differentiate regularly-scheduled programming from superseding programming. Once again, StratosAudio errs in reading such a requirement into the claim. *Liebel-Flarsheim*, 358 F.3d at 913; *In re Qapsule Techs., Inc.*, 759 F. App'x 975, 981 (Fed. Cir. 2019) ("[U]nclaimed functional distinctions or uses are insufficient to overcome anticipation.").

Further, StratosAudio's argument here appears to be inconsistent with one of the constructions it proffers for this same claim limitation in the companion appeal involving the related '405 patent, Appeal No. 23-1720. There, StratosAudio asserts (in one of its many constructions) that the claimed data must be user specific—i.e., it must differentiate between a program delivered to one user from the same program delivered to another user. Appeal No. 23-1720, Dkt. 22, at 31. That is different than StratosAudio's apparent interpretation here, which requires the claimed data to differentiate between a regularly-scheduled program for one user and a superseding program delivered *to the same user*. But the "specific instance" limitation must be interpreted consistently across *both* patents. *Omega Eng'g*, 334 F.3d at 1334. StratosAudio's inconsistency in this regard only further undermines its interpretation of the "specific instance" limitation in *both* cases. Thus, StratosAudio's alternative constructions should be rejected.

**b.** Even if StratosAudio were right that the claimed data must be "dynamically determined," StratosAudio is wrong that DeWeese's program guide data is *not* dynamically determined.

As explained above, DeWeese's program guide data is transmitted to the set-top box "continuously" and "in real-time," Appx3831(¶0060), and thus is "regularly updated" to reflect current programming, Appx4313-4314(¶63); *see also* Appx4050-4051(154:21-155:9). Accordingly, such data would indeed account for changes in programming and superseding events that impact regularly-scheduled programs.

Notably, StratosAudio cites no evidence to support a contrary finding. Rather, it urges (at 33) the Court to "rely on its own experience." But StratosAudio's "[a]ttorney argument is not evidence," *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017), and it "does not undermine" DeWeese's plain disclosure and Volkswagen's expert testimony as to how a skilled artisan would read DeWeese, *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1342 (Fed. Cir. 2020); *see also Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373 (Fed. Cir. 2020) ("In an anticipation analysis, the dispositive question is whether *a skilled artisan* would reasonably understand or infer from a prior art reference that every claim limitation is disclosed in that single reference." (cleaned up and emphasis added)).

Regardless, StratosAudio's argument is misplaced. To anticipate, a prior-art reference need only satisfy each limitation under a single set of circumstances, not every set of circumstances. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) ("Just as an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes, a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention." (cleaned up)); *Target Corp. v. Proxicom Wireless, LLC*, 2023 WL 6135787, at *5 (Fed. Cir. 2023) ("Because there is no dispute that Perttila would perform claim 25's determining recitation at least some of the time, we hold that Perttila teaches that aspect of the claims."). Thus, even if DeWeese were not able to accurately account for superseding programming (it is), the undisputed fact remains that it *does* accurately account for non-superseded programming, which falls within the scope of the claim. *Hewlett-Packard*, 340 F.3d at 1326; *Target*, 2023 WL 6135787, at *5; *cf. In re Antor Media Corp.*, 689 F.3d 1282, 1290 (Fed. Cir. 2012) (a prior art reference "only needs to enable the portions of its disclosure alleged to anticipate the claimed invention").

Thus, even if the Court credits StratosAudio's under-developed "dynamically determined" claim construction, it should affirm. *See Corning*, 873 F.3d at 901-903; *Packers Plus*, 773 F. App'x at 1088. At the very least, if the Court

adopts StratosAudio's construction, the Court should remand for the Board to address Volkswagen's argument in the first instance.

## III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT DEWEESE DISCLOSES THE "FIRST" AND "SECOND" "RECEIVER MODULE" LIMITATIONS.

Finally, StratosAudio challenges the Board's finding that DeWeese's set-top box and DOCSIS modem satisfy the "first" and "second" "receiver module" limitations, respectively. Appx173(35:24-31). Because that finding is plainly supported by substantial evidence, StratosAudio resorts to attacking a finding the Board never made—i.e., that a single component (the DOCSIS modem) satisfies *both* limitations. StratosAudio's mischaracterization of the record is no basis to disturb the Board's fact findings. The Court should affirm.

### A. The Board's Finding that DeWeese's Set-Top Box and DOCSIS Modem Satisfy the "First" and "Second" "Receiver Module" Limitations Is Supported by DeWeese's Disclosure and Volkswagen's Expert Testimony.

Here again, the Board's finding that DeWeese satisfies the "first" and "second" "receiver module" limitations is straightforward and supported by substantial evidence.

As Dr. Williams explained, DeWeese's system contains two distinct modules: (1) a set-top box that receives television program signals from a television distribution facility, and (2) a DOCSIS modem—i.e., a well-known standard cable modem in the art—that receives real-time chat messages from a

chat server. Appx3719-3726(¶¶122-131) (citing Appx3830(¶¶0051-0059)); Appx4314-4316(¶¶64-68). Dr. Williams testified that the "'set-top box 26' corresponds to the claimed 'first receiver module'" and that the 'DOCSIS modem' corresponds to the claimed 'second receiver module.'" Appx3721(¶124); Appx3725-3726(¶131). In other words, he pointed to two separate components as satisfying the two separate "receiver module" limitations.

The Board agreed with Dr. Williams, once again "credit[ing]" his testimony. Appx110-111; *see generally* Appx55-58. And, indeed, StratosAudio acknowledges (at 23) that "the Board *accepted Volkswagen's expert's explanation*" on this score. That resolves the matter in Volkswagen's favor. *See Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1371 (Fed. Cir. 2020) ("Our task is not to determine which theory we find more compelling. It is not for us to second-guess the Board's assessment of the evidence. Rather, the only question before us is whether the conclusion adopted by the Board is supported by substantial evidence. Here, we conclude that it is." (cleaned up)).

### B. StratosAudio's Contrary Arguments Misapprehend Both the Factual Record and the Law.

StratosAudio's challenge to the Board's ruling is based on its assertion that the Board found "the same DOCSIS modem in DeWeese" satisfies both the "first" and "second" "receiver module" limitations. BBr. 34. StratosAudio argues that, as

a legal matter, the "first" and "second" "receiver modules" cannot be satisfied by the same component in the prior art. *Id.* at 26, 34-35. StratosAudio is wrong on both the facts and the law.

### 1. The Board Did Not Find that DeWeese's DOCSIS Modem Satisfies Both the "First" and "Second" "Receiver Module" Limitations.

StratosAudio's assertion that the Board found that the DOCSIS modem satisfies *both* "receiver module" limitations is simply wrong. As explained above, Volkswagen never pointed to the DOCSIS modem as satisfying the first receiver module. Rather, Volkswagen and its expert argued all along that DeWeese's *set-top box* is the first receiver module, and that the DOCSIS modem is the second receiver module. *Supra* pp.61-62; Appx2322-2329; Appx2687-2689; Appx2821-2822. Indeed, StratosAudio *itself* acknowledged that Volkswagen pointed to the *set-top box* (not the DOCSIS modem) as the first receiver module. *See* Appx2623 (referring to "the set-top box (*i.e.*, Petitioner's asserted *first receiver module*)"). The Board agreed with Volkswagen. Appx107-111. Thus, StratosAudio's argument on appeal is premised on a factual assertion that is demonstrably false.

To the extent StratosAudio means to say that the Board improperly found that the *set-top box* satisfies both "receiver module" limitations merely because the DOCSIS modem can be housed within the set-top box, that argument also fails. DeWeese is clear that the DOCSIS modem may comprise a separate, standalone

device. *See* Appx3831(¶0061) (noting that "some or all of the functions of the … chat set-top box application … may be … performed by chat equipment (e.g., a server, video bridge or audio bridge) operating on the television distribution facility"); *see also* Appx3831(¶0059) (explaining that set-top box circuitry could be moved to "other suitable television equipment" such as "an advanced television receiver such as a high-definition tele vision (HDTV) receiver or other such television-based platform").

Regardless, even when the modem *is* housed in the set-top box, Dr. Williams testified that "the DOCSIS modem operates separately from, and evokes different components than the other portions of set top box 26 when processing real-time communications and chat requests." Appx4316(¶68) (citing Appx3721-3726(¶¶125-131)); *see also* Appx5046-5048(111:19-113:4). Thus, the two components are in fact distinct even if they are combined in a single housing. Appx109-111. Once again, StratosAudio cites no record evidence supporting a contrary conclusion.

No matter how you slice it, Volkswagen argued and the Board found that two separate components satisfy the two separate "receiver module" limitations. Accordingly, StratosAudio's legal argument that a single component in the prior art cannot satisfy two separate claim limitations is profoundly misplaced. This Court can affirm without even addressing that argument.

### 2. The Law Does Not Categorically Require Multiple Claim Limitations to Be Satisfied by Separate Prior-Art Components.

In any event, StratosAudio is wrong about the law too. This Court's precedent establishes that "a single element, feature, or mechanism" in a prior-art reference "can ordinarily satisfy multiple claim limitations, including by performing multiple claimed functions." *Google LLC v. Personal Audio, LLC*, 743 F. App'x 978, 985 (Fed. Cir. 2018); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-1232 (Fed. Cir. 2011); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1055 (Fed. Cir. 2009); *see also Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1305 (Fed. Cir. 1999) ("[A] particular means may perform more than one function."); *In re Kelley*, 305 F.2d 909, 914 (C.C.P.A. 1962) ("We see no reason why a single structural element … which performs two separate functions, cannot support a claim reciting broadly these separate functions."). Notably, the Board cited this precedent in its Institution Decision and invited StratosAudio to address it in post-institution briefing. Appx2513-2514 & n.7. Not only did StratosAudio fail to do so during the IPR trial, it fails to do so on appeal.

Instead, StratosAudio cites (at 35-36) inapposite cases and suggests that they somehow foreclose the Board's legal conclusion. They do not. Most of StratosAudio's cases involve claims that require one structural component to interact with another. *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,

616 F.3d 1249, 1254 (Fed. Cir. 2010) (claim reciting "spring means connected to [a] hinged arm"); *Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 551, 553 (Fed. Cir. 2021) (claim reciting "a speech recognition system coupled to a wireline node"); *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 701 F. App'x 978, 980, 981 (Fed. Cir. 2017) (claim reciting "a diverting unit configured to divert a message … to a controlling entity"). In such circumstances, the two components must be separate and distinct—after all, it would be "nonsensical" for a component to interact with itself. *Becton*, 616 F.3d at 1255 (noting that this would be "a physical impossibility").

In all of StratosAudio's cited cases, moreover, the specifications "fully support[ed] the conclusion that" the two recited components were separate and distinct or at least did not suggest otherwise. *Id.* at 1255; *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004) ("[T]he specification plainly describes the two components as separate."); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996) (explaining that specification described claimed components in a way that suggested "they logically cannot be one and the same"); *Comcast*, 838 F. App'x at 553; *HTC*, 701 F. App'x at 982-983 ("The specification reinforces

the inference that the claimed 'diverting unit' and 'controlling entity' are separate components.").[9]

Here, by contrast, claim 9 of the '081 patent does not require the "first" and "second" receiver modules to interact with one another. Rather, each module receives its respective media content, which is then concurrently presented on an output. Thus, "[n]o similar 'nonsensical' result arises here." *Bot M8 LLC v. Sony Interactive Entm't LLC*, 2023 WL 5606978, at *4 (Fed. Cir. 2023) (rejecting a nearly-identical argument to the one StratosAudio makes). Further, in contrast to StratosAudio's cited cases, the '081 patent specification affirmatively states that the two receiver modules *can* be combined into a single component. As StratosAudio itself concedes (at 36-37), the specification defines the claimed modules broadly, noting that they "can be deemed part of one another, one module

---

[9] StratosAudio's non-precedential Board decisions are to the same effect. *See Lego Sys., Inc. v. MQ Gaming LLC*, IPR2020-01446, Paper 14, at 12-14 (P.T.A.B. 2021) (claim recited "game control system" for controlling effects produced by "first gaming device"); *Hisense Co. v. Polaris PowerLED Techs., LLC*, IPR2020-01337, Paper 11, at 18 (P.T.A.B. 2021) ("The Specification … supports that the 'user [input] signal' is a distinct, separately identifiable element from the 'dark level bias.'"); *Cisco Sys., Inc. v. Egenera, Inc.*, IPR2017-01341, Paper 10, at 14-15 (P.T.A.B. 2017) (claims recited a "control node … connected to the internal communication network"); *Hopkins Mf'g Corp. v. Cequent Performance Prods., Inc.*, IPR2015-00613, Paper 9, at 12 (P.T.A.B. 2015) ("[W]e determine, … based on the Specification of the '780 patent, that claims 1 and 8 of the '780 patent in fact require that the deceleration signal and the inclination signal are separate and distinct.").

can be a subset of another module, and modules may be logical rather than physical." Appx158-159(6:47-7:8). The Board relied on that very disclosure to reject StratosAudio's argument that the modules must be "separate and distinct." Appx67-70; Appx73-74.

Thus, not only does the specification *not* support StratosAudio's construction, it *conflicts* with the construction. *See Powell*, 663 F.3d at 1231-1232 (finding that "the specification cuts against Home Depot's argument that the 'cutting box' and 'dust collection structure' must be separate components" where it suggested that one component could function as the other); *Retractable Techs.*, 653 F.3d at 1303-1304 (rejecting similar argument where "the specifications and the claims indicate" that two claim limitations "need not be two separate pieces" and can instead "form distinct portions of a single structure"); *Linear Tech.*, 566 F.3d at 1055 (finding that separately-claimed "second" and "third" circuits need not be separate and distinct where the specification explained that they "can share common components").

Resisting this conclusion, StratosAudio asserts (at 37) that the '081 patent's "definitional broadening language" has no effect, and that the claim language controls. But as StratosAudio itself acknowledges, the cited passage's language is "*definitional*." *See* Appx158-159(6:47-7:8) ("[T]he word 'module,' as used herein, refers to … ."); *accord Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210

(Fed. Cir. 2007) (explaining "as used herein, means" to be definitional); *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017) (finding "refers to" and "as defined herein" to be definitional); *Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1378 (Fed. Cir. 2022) (finding "referred to herein" to be definitional). Thus, the passage necessarily defines the meaning of "module" as used *in the claims*. *Grace Instr. Indus., LLC v. Chandler Instrs. Co.,* 57 F.4th 1001, 1010 (Fed. Cir. 2023) ("Where the specification instructs as to the meaning of a claim term, the inventor's lexicography governs." (cleaned up)).

In the end, "the use of two terms in a claim requires that they connote different *meanings*, not that they necessarily refer to two different *structures*." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006). Here, the Board indisputably gave the "first" and "second" "receiver modules" different meanings. Thus, even if the Board had found that a single component in DeWeese satisfies both "receiver module" limitations (it did not), such a finding would be entirely appropriate under this Court's precedent.

## CONCLUSION

For the foregoing reasons, Volkswagen respectfully requests that the Court affirm the Board's ruling invalidating claims 9-11 and 23 of the '081 patent as anticipated. To the extent the Court reverses the Board's express construction of the "output system" limitation or the Board's interpretation of the "specific

instance" limitation, however, Volkswagen requests that the Court hold that DeWeese satisfies the adopted construction or, in the alternative, remand for the Board to determine whether DeWeese satisfies the construction.

October 25, 2023

Respectfully submitted,

*/s/ Richard A. Crudo*

Michael D. Specht
Daniel Yonan
Ryan C. Richardson
Richard A. Crudo
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K Street NW
10th Floor
Washington, DC 20005
(202) 371-2600

*Counsel for Appellee Volkswagen Group of America, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-1719, 1721

**Short Case Caption:** StratosAudio, Inc. v. Hyundai Motor America

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 13,883 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 10/25/2023

Signature: /s/ Richard A. Crudo

Name: Richard A. Crudo

Save for Filing