Nos. 2023-1719, 2023-1721

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

STRATOSAUDIO, INC.,
*Appellant*,
v.
HYUNDAI MOTOR AMERICA,
*Appellee*.

---

STRATOSAUDIO, INC.,
*Appellant*,
v.
VOLKSWAGEN GROUP OF AMERICA, INC.,
*Appellee*.

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Proceeding Nos. IPR2021-00721 and IPR2021-01267

---

## RESPONSIVE BRIEF OF APPELLEE HYUNDAI MOTOR AMERICA

CAMERON W. WESTIN
O'MELVENY & MYERS LLP
610 NEWPORT CENTER DR., 17TH FLOOR
NEWPORT BEACH, CA 92677
(949) 823-6900

RYAN YAGURA
NICHOLAS WHILT
BENJAMIN HABER
CLARENCE ROWLAND
O'MELVENY & MYERS LLP
400 S. HOPE STREET, 18TH FLOOR
LOS ANGELES, CA 90071-2899
(213) 430-6000

CAITLIN P. HOGAN
O'MELVENY & MYERS LLP
TIMES SQUARE TOWER
7 TIMES SQUARE TOWER
NEW YORK, NY 10036
(212) 326-2000

WILLIAM FINK
COKE MORGAN STEWART
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

October 25, 2023

*Attorneys for Appellee Hyundai Motor America*

## REPRESENTATIVE CLAIMS

9. A system for combining multiple media comprising:

9[a] a first receiver module configured to receive at least a first media content and *data enabling the identification of a specific instance of the first media content* from a first broadcast medium;

9[b] a second receiver module configured to receive at least a second media content and uniquely identifying data specific to at least the second media content, the second media content received discretely from the first media content;

9[c] an output system configured to present concurrently the first media content and the second media content on an output of the first receiver module or the second receiver module;

9[d] an input module configured to receive at least a response input responsive to the second media content; and

9[e] a transmitting module configured to transmit a response message having at least the uniquely identifying data specific to the second media content to a computer server.

15. The system of claim 9, wherein, in response to receiving the response message, the computer server is configured to *correlate the response message to the second media content with the specific instance of the first media content*.

Appx173 (emphasis added).

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1719, 23-1721

**Short Case Caption** StratosAudio, Inc. v. Hyundai Motor America

**Filing Party/Entity** Hyundai Motor America

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/25/2023

Signature: /s/ Coke Morgan Stewart

Name: Coke Morgan Stewart

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Hyundai Motor America | Hyundai Motor Company | Hyundai Motor Company |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| O'Melveny & Myers LLP | Ryan Yagura | Nicholas J. Whilt |
| Darin W. Snyder | William Fink | Timothy S. Durst |
| Benjamin Haber | Clarence Rowland | Coke Morgan Stewart |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Continuation of Form 9.**

4. Legal Representatives
Caitlin Hogan
Cameron W. Westin
Byron Raphael LLP
Jordan Raphael
Tim Byron

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ........................................................ 1
INTRODUCTION ........................................................................ 2
STATEMENT OF THE ISSUES ........................................................... 4
STATEMENT OF THE CASE .............................................................. 4
I. The Parties ........................................................................ 4
II. Summary of the Asserted Patent and Claims ..................................... 5
III. The Relevant Prior Art ............................................................ 8
A. Ellis-2005 ........................................................................ 8
B. Crosby ............................................................................ 10
IV. Procedural History ................................................................ 12
SUMMARY OF THE ARGUMENT ......................................................... 19
STANDARD OF REVIEW ................................................................ 22
ARGUMENT ............................................................................. 23
I. The Board's conclusion that claim 9 is unpatentable should be affirmed because Patent Owner forfeited any argument against the Board's finding that Crosby teaches the "specific instance" limitation of claim 9. ........................................................ 23
II. The Board correctly found that Ellis-2005 teaches the "specific instance" limitation of claim 9. ........................................... 28
A. The Board's finding that Ellis-2005 teaches the "specific instance" limitation is supported by substantial evidence and the proper reading of the claims. ...................................... 28
B. Even if the "specific instance" limitation were narrowed, both Crosby and Ellis-2005 teach the limitation. .................... 36
III. The Board's finding that Ellis-2005 in view of Crosby teaches dependent claim 15 is supported by substantial evidence. ................. 38
CONCLUSION ........................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) ....................23

*Arendi S.A.R.L. v. Google LLC*,
882 F.3d 1132 (Fed. Cir. 2018) .................... 22, 28

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
320 F.3d 1339 (Fed. Cir. 2003) ....................33

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ....................37

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ....................27

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ....................29

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) ....................33

*Graham v. John Deere Co. of Kan. City*,
383 U.S. 1 (1966)....................22

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) .................... 23, 35

*In re Cree, Inc.*,
818 F.3d 694 (Fed. Cir. 2016) ....................29

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................32

*In re Motupalli*,
791 F. App'x 895 (Fed. Cir. 2019).................... 23, 28

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................29

*In re Warsaw Orthopedic, Inc.*,
832 F.3d 1327 (Fed. Cir. 2016) ....................22

*Intellectual Ventures II LLC v. Aisin Seiki Co.*,
813 F. App'x 532 (Fed. Cir. 2020)....................23

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Kao Corp. v. Unilever U.S., Inc.*,
441 F.3d 963 (Fed. Cir. 2006) .....27

*Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*,
973 F.3d 1366 (Fed. Cir. 2020) .....28

*KSR Int'l Co. v. Teleflex Inc.,*
550 U.S. 398 (2007).....40

*Packers Plus Energy Servs. Inc. v. Baker Hughes Oilfield Operations, LLC*,
773 F. App'x 1083 (Fed. Cir. 2019) .....38

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) .....39

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) .....22

*StratosAudio, Inc. v. Subaru of America, Inc.*,
Case No. 6:20-cv-01128-ADA (W.D. Texas) .....16

*TQ Delta, LLC v. DISH Network LLC*,
929 F.3d 1350 (Fed. Cir. 2019) .....22

*United States v. Great Am. Ins. Co. of N.Y.*,
738 F.3d 1320 (Fed. Cir. 2013) .....23

*Yorkey v. Diab*,
601 F.3d 1279 (Fed. Cir. 2010) ..... 35, 40

**OTHER AUTHORITIES**

*Instance*, merriam-webster.com, https://www.merriam-webster.com/dictionary/instance .....34

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceedings in the Patent Trial and Appeal Board ("Board") was previously before this or any other appellate court. U.S. Patent No. 8,166,081 ("the '081 Patent") is asserted in:

- *StratosAudio, Inc. v. Hyundai Motor America*, Case No. 2:22-cv-01712 (C.D. Cal.);
- *StratosAudio, Inc. v. Volkswagen Group of America, Inc.*, Case No. 2:22-cv-10524 (E.D. Mich.).

Additionally, Patent Owner's related patent—U.S. Patent No. 9,355,405—is at issue in a companion appeal pending before this Court:

- *StratosAudio, Inc. v. Volkswagen Group of America, Inc.*, Appeal No. 23-1720.

Counsel for Appellee Hyundai Motor America is not aware of any other case in this Court, or in any other court, or before the Board that will directly affect or be directly affected by this Court's decision in this appeal.

## INTRODUCTION

The claims in this case involve the delivery and presentation of media content, like an advertisement, with accompanying content, like a song. The issues on appeal are whether the Board's findings that a U.S. patent application filed by Ellis (Ellis-2005) and a U.S. patent filed by Crosby et al. (Crosby) teach limitations in independent claim 9 and dependent claim 15 are supported by substantial evidence.[1]

As to claim 9, the limitation at issue is "data enabling the identification of a specific instance of the first media content." The Board found that both Ellis-2005 and Crosby teach this limitation. However, while Patent Owner addresses the Board's finding as to Ellis-2005, it fails to address the Board's finding as to Crosby. Because of this, Patent Owner has forfeited this argument on appeal, and the Court can affirm the Board's conclusion that claim 9 is unpatentable without addressing Ellis-2005.

Alternatively, the Board's conclusion can be affirmed on the basis that Ellis-2005 teaches "data enabling the identification of a specific instance of the first

[1] The above appeal arises from one of two IPR proceedings involving the '081 Patent. The present IPR, IPR2021-01267, was filed by Hyundai and challenges independent claim 9 and dependent claims 10, 11, 15, and 23. The other, IPR2021-00721, was filed by Volkswagen Group of America, Inc. and challenges claims 9-11 and 23. The appeal from the second IPR is the subject of Appeal No. 2023-1721.

media content." The Board's finding was based on its detailed analysis of the prior art's teachings and weighing both parties' expert testimony. Patent Owner attempts to challenge this finding by narrowing the meaning of the limitation at issue. The Board, however, agreed with Hyundai's expert that the claims and specification do not support the narrow meaning Patent Owner seeks to impose. That determination is entitled to deference. Moreover, even under Patent Owner's narrower interpretation, Crosby and/or Ellis-2005 teach the limitation.

For dependent claim 15, the Board found that Ellis-2005 teaches the requisite additional limitations, including a server that "correlate[s] the response message . . . with the specific instance of the first media content." Again, the Board considered the language of the references and the testimony of both parties' experts on what the prior art would teach to a person of ordinary skill in the art. The Board ultimately agreed with Hyundai's expert's explanation of the reference over that of Patent Owner's expert.

Because the Board's obviousness decisions were supported by substantial evidence, and Patent Owner fails to identify any errors that would otherwise warrant reversal or remand, Hyundai respectfully requests that the Board's Final Written Decision be affirmed.

## STATEMENT OF THE ISSUES

1. Did Patent Owner forfeit its ability to appeal the Board's finding that Crosby teaches the limitation "data enabling the identification of a specific instance of the first media content" from claim 9, thus providing an independent ground for affirming the Board's determination that claim 9 is unpatentable?

2. Was the Board's finding that Ellis-2005 teaches the limitation "data enabling the identification of a specific instance of the first media content" from claim 9 supported by substantial evidence?

3. Was the Board's finding that Ellis-2005 teaches the limitation "computer server configured to correlate the response message to the second media content with the specific instance of the first media content" from dependent claim 15 supported by substantial evidence?

## STATEMENT OF THE CASE

### I. The Parties

Hyundai Motor America is a leading automotive manufacturing company that makes, sells, and services Hyundai vehicles for the U.S. market. Hyundai Motor America is headquartered in Southern California, with research and engineering facilities in California and Michigan and assembly and manufacturing facilities in Alabama.

Patent Owner StratosAudio, Inc. owns patents related to media enhancement technology and has asserted them against a number of major automotive and electronics companies.

## II. Summary of the Asserted Patent and Claims

The ’081 Patent generally relates to “systems and methods for associating an advertising media signal with another media signal,” such as a song. Appx156 (1:19-20). According to the ’081 Patent, associating an advertised product with a particular song or artist makes advertising more effective. Appx156 (1:31-34). The ’081 Patent’s embodiments focus on advertisements and songs, but other embodiments relate more generally to media content such as text messages, instant messages, television programming, and the like. Appx158 (5:22-29); Appx159 (8:24-28); Appx160 (9:16-22).

Claim 9 describes a system “for combining multiple media,” including first and second “receiver modules” configured to receive first and second “media content,” respectively. Appx173. The first receiver module also receives “data enabling the identification of a specific instance of the first media content,” while the second receiver module also receives “uniquely identifying data specific to at least the second media content.” *Id.* The claimed system also includes an “output system” that presents the first and second media content “concurrently,” and a “transmitting module” that transmits a “response message” to a server. *Id.*

The ’081 Patent’s Figure 3, shown below, shows an embodiment of a user device, such as a cellular phone within the claimed system. Appx147.

FIG. 3




In the embodiment, the user device receives a song (the “first media content”) from a radio station, an advertisement from a third party (the “second media content”), and presents both concurrently to the user on the device’s display panel 450 (the “output system”). Appx157 (3:27-29); Appx158 (5:22-29); Appx159 (8:44-57); Appx160 (9:4-52, 10:29-32); Appx160 (10:56-11:13); Appx161 (12:37-60); Appx165 (19:17-44, 20:37-46). Accordingly, the device’s display panel 450 “can show information relating to the radio program being played,” where that information is acquired “from an associated media signal 112 and/or from the media association system 2.” Appx165 (19:13-17).

When the "associated media signal" containing the second media content (*i.e.*, the advertising information) is sent separately from the first media content, the '081 Patent describes assigning an "identifier" to the specific instance of the first media content. Appx161 (11:28-37). The patent describes "identifier" as a "broad term[] that refer[s] to a representation of that which is being identified" (Appx159 (7:53-55)), and the "identifiers" may or may not be "unique":

> In some cases, when the first media signal 111 and the associated media signal 112 are not integral or are sent as separate media signals, then a unique identifier 115 can be assigned to the first media signal 111 and/or the associated media signal 112. ***In other embodiments, the identifier is not a unique identifier.*** In some embodiments, the unique identifier 115 is specific to the transmission of the first media signal 111 and/or the associated media signal 112. In another embodiment, the unique identifier 115 is tied to the specific instance of each media content segment conveyed via the first media signal 111. In another embodiment, the unique identifier 115 is tied to the specific instance of each media content segment conveyed via the associated media signal 112.

Appx161 (11:24-37) (emphasis added); *see also* Appx162 (13:31-34) ("[T]he advertisement media signal 113 transmitted by the advertisement entity 6 can contain a unique and/or non-unique identifier 115, along with further associated data integrated with the signal.").

Dependent claim 15 recites the system of claim 9, and further requires the computer server that receives the response message to "correlate the response message to the second media content with the specific instance of the first media content." In an example from the '081 Patent's specification, a broadcast receiving

system in the device receives a user input and transmits an identifier (the "response message") to a "broadcast response and business system 1101." Appx171 (32:38-44). This system 1101 then connects to a database (the "computer server") to perform a "lookup" of information such as "the broadcast source, the time and date of the broadcast, and/or the content associated with the broadcast." Appx171 (32:45-53).

## III. The Relevant Prior Art

### A. Ellis-2005

Ellis-2005, titled "Music Information System for Obtaining Information on a Second Music Program While a First Music Program is Played," is U.S. Patent Application Publication No. 2005/0227611 A1, published on October 13, 2005, more than one year before the earliest priority date of the '081 Patent, February 5, 2008. Appx1304-1333. Ellis-2005 qualifies as prior art under at least pre-AIA 35 U.S.C. § 102(b). Appx196. Ellis-2005 relates to an interactive music application system that employs two tuners, each of which can tune to separate media channels. Appx1323 ¶ 2. The media channels are disclosed as digital signals that include "tracks," such as "video tracks, audio tracks, and data or other suitable tracks." Appx1325 ¶ 41. For example, music channels may include an "audio track," along with a "data track" that carries music information. *Id.* Ellis-2005's

Figure 4 contains a schematic diagram showing the two tuners 50 and 51. Appx1311.




*FIG. 4*

The digital signals for the media channels also contain “music information” for the respective media channel. Appx1323 ¶ 7. The music information is contained in “an in-band data stream” and includes “track information, title information, artist information, graphics, web links, ordering information or other information related to the music programming carried on the music channel.” Appx1323 ¶ 8. Information for each track is received in packets that contain “packet identifiers (‘PIDs’)” and “PID map[s].” Appx1325 ¶ 41. The packet identifiers identify “the track that each packet belongs to.” *Id.* The packet identifier map “indicates which PIDs correspond to which digital channels.” *Id.*

Using the two tuners of Ellis-2005, a user, while tuned to a first music channel and obtaining music information from that channel from the first tuner 50, can also browse for information on songs that are playing on other channels using the second tuner 51. Appx1323 ¶ 14; Appx1327-1328 ¶¶ 53, 56, 58-59.

In addition, the system provides a user "with an opportunity to purchase music merchandise (*e.g.*, an album, record, CD, concert tickets, etc.) . . . associated with a music program." Appx1330 ¶ 87; Appx1331 ¶ 98. In one example, the user can "listen to one music program while ordering a CD for a music program on another music channel." Appx1330-1331 ¶ 87. When a user chooses to buy music merchandise, Ellis-2005's user music equipment generates a "merchandise request." *Id*. The merchandise request "includes information necessary for ordering the merchandise based on the type of ordering scheme used," such as "a merchandise identifier, a user identifier or account number, or other suitable information." Appx1331 ¶ 88.

### B. Crosby

Crosby, titled "Internet-based Interactive Radio System for Use with Broadcast Radio Stations," is U.S. Patent No. 6,628,928 B1, issued on September 30, 2003, more than one year before the earliest priority date of the '081 Patent, February 5, 2008. Appx1177-1197. Crosby qualifies as prior art under at least pre-AIA 35 U.S.C. § 102(b). Appx193. Crosby relates to a radio system

where a user, while listening to a radio broadcast on a mobile unit, selects program segments of interest, including advertisements, so that the user may later review those selected program segments of interest. Appx1189 (3:59-63). Those "commands" are then forwarded to an interactive radio network operations center by the mobile unit. Appx1190 (6:4-9).

Crosby discloses that digital radio broadcasts can include "information encoded therein identifying the program segments." Appx1189 (4:51-53). When a user selects such a broadcast, the mobile unit "generates a program attribute signal which specifically identifies the content of the [selected] program segment" and the broadcaster, which is sent to a network operations center. Appx1189 (4:53-58). The network operations center then "directly accesses the program segment and vendor information databases based upon the program segment identified by the digital radio signals to retrieve information associated with the program segment selected by the [user]." Appx1193 (11:44-54). If the radio broadcast does not include information specifically identifying the selected program segments, the mobile unit can transmit a broadcast attribute signal that identifies, *e.g.*, a carrier frequency of the radio broadcast, the date and time it was received, the geographical location of the mobile unit, and a subscriber ID or mobile unit ID. Appx1191 (7:27-37); Appx1192 (9:42-46).

## IV. Procedural History

Hyundai filed its Petition in IPR2021-01267 on July 16, 2021. Appx136; Appx175. The Petition was supported by a declaration from expert witness Dr. Kevin Almeroth, Professor Emeritus of the Department of Computer Science at the University of California, Santa Barbara. Appx771 (Almeroth Decl.); Appx849 (*curriculum vitae*). As shown in the chart below, the Petition asserted five grounds challenging independent claim 9 and dependent claims 10, 11, 15, and 23 of the '081 Patent. Appx184.

| | **IPR2021-01267** |
|---|---|
| **Ground 1** | Claims 9, 15, and 23 are rendered obvious by U.S. Patent No. 5,303,393 ("Noreen") |
| **Ground 2** | Claims 9, 15, and 23 are rendered obvious by Noreen in view of U.S. Patent No. 6,628,928 ("Crosby") |
| **Ground 3** | Claims 10 and 11 are rendered obvious by Noreen in view of Crosby and WO Publication No. 2002/067447 ("Ellis-2002") |
| **Ground 4** | Claims 9-11, 15, and 23 are rendered obvious by U.S. Patent Publication No. 2005/0227611 ("Ellis-2005") |
| **Ground 5** | Claims 9-11, 15, and 23 are rendered obvious by Ellis-2005 in view of Crosby |

Grounds 4 and 5 are relevant here.

Hyundai's Petition asserted that no terms required construction. Appx191. Relevant to this appeal, Hyundai asserted that both Ellis-2005 and Crosby taught "data enabling the identification of a specific instance of the first media content." Specifically, under Ground 4, Hyundai asserted that Ellis-2005's disclosure of packet identifiers that enable distinguishing between different tracks and packet

identifier maps that identify which packet identifiers correspond to which digital channels teach this limitation. Appx221-223. Under Ground 5, Hyundai asserted that Crosby's disclosure of unique program segment identifiers including "'a program segment ID, the date and time of broadcast of the program segment, and the broadcaster ID'" teach this limitation, and that a person of ordinary skill in the art would have been motivated to combine these teachings with Ellis-2005's system to "ensure[] identification of the exact instance of the program segment and ensure[] accurate fulfillment of the user's selection." Appx223-224 (quoting Appx1192 (9:14-19)).

Patent Owner filed a Preliminary Response on October 28, 2021. Appx275. The Preliminary Response was not supported by any expert testimony and did not contend any claim construction was necessary. *See* Appx363.

On January 25, 2022, the Board instituted review on all asserted grounds, finding that Hyundai's Petition showed a reasonable likelihood that it would prevail in showing the unpatentability of at least one challenged claim. Appx344-345. For the purposes of instituting review, the Board found it unnecessary to construe any claims. Appx364.[2]

---

[2] The Board noted that one of Patent Owner's attempts to distinguish the prior art appeared to argue the interpretation of a claim term and instructed Patent Owner that, if it "wishes to raise a claim construction issue on this point, it should be

Patent Owner filed a Patent Owner Response on April 19, 2022 (Appx446), supported by testimony from its expert Dr. Todd Moon (Appx1954). The Response confirmed its position that no construction was necessary for purposes of deciding Hyundai's Petition. Appx465 ("Petitioner asserts that no term requires explicit construction in order 'to resolve the particular grounds presented in the Petition.' . . . For the purposes of this proceeding, Patent Owner agrees."). Patent Owner then made substantive arguments attempting to distinguish the prior art under all five grounds. Relevant to this appeal, Patent Owner argued that Ellis-2005 alone (Ground 4) failed to teach "data enabling identification of a specific instance of the first media content" recited in claim 9 (Appx494-496), and failed to teach "correlating the response message to the second media content with the specific instance of the first media content" recited in dependent claim 15 (Appx496-499).

For the combination of Ellis-2005 and Crosby (Ground 5), Patent Owner did not dispute that Crosby disclosed "data enabling identification of a specific instance of the first media content." *See* Appx499-503. Instead, Patent Owner argued that a person of ordinary skill in the art would not have been motivated to combine Crosby's disclosure of a program segment ID and "date and time of

---

directly and fully addressed in Patent Owner's papers and not left open to speculation." Appx383 n.6.

broadcast" with the teachings of Ellis-2005, and that neither Crosby nor Ellis-2005 specified a need to identify a specific instance of the media content. *Id*.

Hyundai filed its Reply on July 12, 2022 (Appx515) with another declaration from Dr. Almeroth (Appx1445). Hyundai's Reply rebutted each of the arguments in Patent Owner's Response, noting that Patent Owner was improperly attempting to construe "data enabling identification of a specific instance of the first media content" as requiring the data to "distinguish between two instances (i.e., occurrences) of the same message," despite its representation that no terms required construction. Appx524-525; Appx539-540. Further, Hyundai noted that Patent Owner did not dispute that, "even under its narrow interpretation," Crosby disclosed the "specific instance" limitation. Appx540-542.

On August 24, 2022, Patent Owner filed a Sur-Reply. Appx567. The Sur-Reply largely repeated arguments from its earlier Patent Owner Response. In its Sur-Reply, Patent Owner reiterated its position that it was "not seeking to construe Element 9[a]," including the "data enabling identification of a specific instance of the first media content" term. Appx589.

Following its Sur-Reply, Patent Owner requested and received permission from the Board to file a Supplemental Brief. Appx629. In its Supplemental Brief, Patent Owner requested that the Board "adopt the same understanding as the district court" in another litigation, with a different party (Subaru) involving the

’081 Patent, for the term “‘an output system configured to present concurrently the first media content and the second media content on an output of the first receiver module or the second receiver module’ in claim element 9[c].”[3] Appx630; Appx632. Patent Owner did not request claim construction of any other terms.

Hyundai filed a Response to Patent Owner’s Supplemental Brief on September 30, 2022, disputing its characterization of the district court’s conclusion. Appx636-637.

The Board held an oral hearing on October 24, 2022. Appx654. Once again, neither party sought a construction of the term “data enabling identification of a specific instance of the first media content.” *See, e.g.*, Appx693-698 (discussing limitation 9[a] and Hyundai’s Grounds 4 and 5).

On January 23, 2023, the Board issued its Final Written Decision. Appx1-52. The Board stated that it “agree[d] with the parties’ original positions on claim construction . . . that no terms require express construction in order to resolve the patentability of the challenged claims in this proceeding.” Appx12-13. The Board noted that the claim construction issue briefed in Patent Owner’s Supplemental Brief only applied to claim limitation 9[c], and that claim limitation was not disputed as to Grounds 4 and 5. Appx13 n.2. The Board concluded that claims 9-

---

[3] *StratosAudio, Inc. v. Subaru of America, Inc.*, Case No. 6:20-cv-01128-ADA (W.D. Texas).

11, 15, and 23 are "unpatentable under 35 U.S.C. § 103(a) as obvious over Ellis-2005 and Crosby," Ground 5 of Hyundai's Petition. Appx37; Appx49-50.[4] For independent claim 9, the Board noted that Patent Owner either did not contest or did not respond to Hyundai's evidence and arguments with respect to claim 9's preamble and limitations 9[b], 9[c], 9[d], and 9[e]. Appx20; Appx30; Appx33-34; Appx36. For the lone remaining limitation 9[a], the Board first agreed with Hyundai that Ellis-2005 teaches "data enabling the identification of a specific instance of the first media content" and specifically rejected Patent Owner's arguments that the claim should be applied more narrowly to the prior art. The Board noted that the limitation required "data enabling the identification of a specific instance of the first media content" and nothing restricted "identification" to "distinguishing between two or more instances of the same media content," as Patent Owner argued. Appx24. The Board noted that "identifying" could be met by identifying "either where the data for that media content is within the stream or by distinguishing between different music 'tracks' in the stream." *Id.*

---

[4] The Final Written Decision did not reach Hyundai's Grounds 1-4 "because Petitioner has shown that all of the challenged claims are unpatentable" under Ground 5. Appx49. Should the Board vacate or reverse the Board's determination as to Ground 5, Hyundai requests that it remand to the Board for determination of Grounds 1-4 in the first instance.

The Board then determined that Crosby also taught "data enabling the identification of a specific instance of the first media content." The Board rejected Patent Owner's arguments against combining Crosby's teaching of program segment ID and time and date information with Ellis-2005's system, agreeing with Hyundai's expert Dr. Almeroth "that this combination of Ellis-2005 and Crosby 'would have ensured identification of the exact instance of the program segment and ensured accurate fulfillment of the user's selection.'" Appx26 (quoting Appx834-835 (Almeroth Decl.) ¶ 131). Accordingly, "[b]ased on the complete record and for the reasons discussed herein," the Board found that "Petitioner has demonstrated that the combination of Ellis-2005 and Crosby meets the recited '*first receiver module configured to receive at least a first media content and data enabling the identification of a specific instance of the first media content from a first broadcast medium*' of limitation 9[a]." Appx26-27.

For dependent claim 15, the Board reiterated its determination that the "data enabling the identification of a specific instance" from limitation 9[a] is taught by both Ellis-2005 and Crosby:

> As explained above, we are persuaded by Petitioner's arguments that the PIDs and PID maps stored in memory in Ellis-2005 constitute "data enabling the identification of a specific instance of the first media content," and also that the combination of Ellis-2005 and Crosby (i.e., incorporating into Ellis-2005 the use of program segment IDs or other information necessary to identify program segments as taught by Crosby) teaches the limitation.

Appx46. The Board then found that Ellis-2005's disclosure of a "merchandise request" met the limitation of dependent claim 15 "because this feature allows the user to purchase merchandise that is related to the music program that the user is listening to at the time the purchase is made (i.e., correlated with the specific instance of the first media content)." Appx46.

## SUMMARY OF THE ARGUMENT

In IPR2021-01267, the Board correctly concluded that claims 9-11, 15, and 23 of the '081 Patent are obvious in view of the combination of Ellis-2005 and Crosby. On appeal, Patent Owner addresses only two aspects of the Board's decision.

First, as to claim 9, Patent Owner argues that the Board erred in finding that Ellis-2005 teaches one limitation, "data enabling the identification of a specific instance of the first media content." However, the Board found that *both* Ellis-2005 and Crosby teach this limitation. The Board unambiguously stated "that the PIDs and PID maps stored in memory in Ellis-2005 constitute 'data enabling the identification of a specific instance of the first media content,' *and also* that the combination of Ellis-2005 and Crosby (i.e., incorporating into Ellis-2005 the use of program segment IDs or other information necessary to identify program segments *as taught by Crosby*) teaches the limitation.'" Appx46 (emphases added). Because

Patent Owner failed to appeal the Board's finding as to Crosby, it has forfeited this argument, which is fatal to its appeal as to claim 9.

As to the issue that Patent Owner does brief, whether *Ellis-2005* teaches the limitation "data enabling the identification of a specific instance of the first media content," Patent Owner attempts to narrow the meaning of the term. It argues that "specific instance" means "specific occurrence," "identification of a specific instance" means "distinguishing between two or more instances of the same media content," and "data enabling" that identification must be "something akin to a unique serial number for a particular transmission to a particular user on a particular stream for that particular content." Appellant's Br. 38. But Patent Owner never argued for a construction of any of these terms and narrowing the meaning of the limitation in this way is not supported by the intrinsic evidence. Hyundai argued, and the Board agreed, that because Ellis-2005 teaches packet identifiers and packet identifier maps that "identify where the data is within the stream and distinguish between different tracks," it teaches the "data enabling the identification of the specific instance" limitation recited in the claims. Appx24. The Board based that finding on substantial evidence: the claims, the specification, Ellis-2005, and the testimony of Hyundai's expert. Certainly nothing "akin to a unique serial number" is required. However, even under Patent Owner's narrower reading, Crosby and/or Ellis-2005 still teach the limitation.

Second, for dependent claim 15, which recites "[t]he system of claim 9, wherein, in response to receiving the response message, the computer server is configured to *correlate* the response message to the second media content with the specific instance of the first media content" (emphasis added), Patent Owner argues that the Board's finding that Ellis-2005 teaches this limitation is inconsistent with its finding for claim 9 and that the required "correlation" is not taught. However, Hyundai argued, and the Board agreed, that because Ellis-2005 teaches a server correlating a "merchandise request" to the music program that the user is listening to at the time the purchase is made, it teaches the additional limitation of claim 15. Appx42-43. The Board also agreed with Hyundai's expert's testimony that a person of ordinary skill in the art would have understood this disclosure from Ellis-2005 to teach the recited "correlation." Appx46. There is nothing inconsistent about this finding. Thus, the Board again based its finding on substantial evidence: the claims, the specification, Ellis-2005, and the testimony of Hyundai's expert. Appx46.

Accordingly, the Board's conclusion that all challenged claims are unpatentable are based on findings supported by substantial evidence. For these reasons, Hyundai respectfully requests that the Board's Final Written Decision be affirmed.

## STANDARD OF REVIEW

This Court reviews "the PTAB's factual findings for substantial evidence and its legal conclusions *de novo*." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015). Obviousness "is a question of law . . . based on underlying findings of fact." *TQ Delta, LLC v. DISH Network LLC*, 929 F.3d 1350, 1360 (Fed. Cir. 2019). Relevant underlying questions of fact include (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art, and (4) the presence of objective indicia of nonobviousness such as commercial success, long felt but unsolved needs, failure of others, and unexpected results, and (5) whether a person of ordinary skill in the art would have been motivated to combine the prior art to achieve the claimed invention and whether there would have been a reasonable expectation of success in doing so. *Id.* (citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966), and *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333 (Fed. Cir. 2016)).

While the determination of obviousness is a question of law reviewed *de novo*, any "underlying factual findings that draw on extrinsic evidence," including expert testimony, "are reviewed for support by substantial evidence in the record." *Arendi S.A.R.L. v. Google LLC*, 882 F.3d 1132, 1133 (Fed. Cir. 2018). The Court "defer[s] to the Board's credibility determinations regarding expert testimony."

*Intellectual Ventures II LLC v. Aisin Seiki Co.*, 813 F. App'x 532, 538 (Fed. Cir. 2020).

## ARGUMENT

### I. The Board's conclusion that claim 9 is unpatentable should be affirmed because Patent Owner forfeited any argument against the Board's finding that Crosby teaches the "specific instance" limitation of claim 9.

When an appellant fails to challenge an independent ground for affirming the Board's determination in its opening brief, those arguments are forfeited. *In re Motupalli*, 791 F. App'x 895, 897 (Fed. Cir. 2019) (appellant "intentionally omitted arguments challenging" some of the PTAB's grounds for finding claims invalid); *see also Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an argument not raised in its opening brief."). Similarly, "[i]t is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013). Moreover, "[a]bsent exceptional circumstances" not present here, this Court generally does not "consider arguments that the applicant failed to present to the Board." *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (citations omitted).

On appeal, Patent Owner challenges the Board's finding that Ellis-2005 discloses "data enabling the identification of a specific instance of the first media

content," but Patent Owner's Appeal Brief does not address the Board's finding that *Crosby* teaches this limitation. Rather, in its Opening Brief, Patent Owner claims that "[t]he Board did not reach or decide the use of any disclosure from Crosby for" the "data enabling the identification of a specific instance of the first media content" limitation and that this makes Crosby "essentially irrelevant to this appeal." Appeal Br. at 25; *see also id.* at 4 (claiming there is "no Board finding that any disclosure of Crosby filled this gap"); *id.* at 24 ("The Board did not reach Hyundai's alternative argument that Crosby independently discloses this limitation."); *id.* at 38 n.3 ("the Board did not reach to Crosby for disclosure of the 'specific instance' data of claim 9"). Patent Owner is not correct.

In its Petition, Hyundai argued that Crosby teaches a system that allows subscribers to "select various advertisements, musical selections or the like while listening to the radio" and "review information pertaining to the various program segments that have been selected" at a later time on the Internet, by way of unique program segment identifiers, which include "a program segment ID, the date and time of broadcast of the program segment, and the broadcaster ID for the broadcaster of the segment." Appx223 (citing Appx1189 (3:59-4:19); Appx1192 (9:14-19)). Hyundai also argued that a person of ordinary skill in the art would have recognized that this data "identif[ies] specific instances of media content," and would have been motivated to incorporate this teaching into Ellis-2005's

system, which already disclosed using "identifiers, graphics, or other information included in an in-band data stream on a music channel." Appx223 (citing Appx1330 ¶ 87). As Dr. Almeroth testified, doing so "would have ensured identification of the exact instance of the program segment and ensured accurate fulfillment of the user's selection." Appx223-224 (citing Appx834-835 ¶ 131).

Before the Board, Patent Owner did not dispute that Crosby teaches "data enabling identification of a specific instance of the first media content." Rather, it argued only that a person of ordinary skill in the art would not have been motivated to combine Crosby with Ellis-2005. Appx499-503. Patent Owner's expert likewise did not offer any testimony that Crosby did not disclose this limitation, instead he testified against the motivation to combine it with Ellis-2005. *See* Appx2015-2016 ¶ 119; *see also* Appx1474 (Almeroth Reply Decl.) ¶ 49 ("Dr. Moon does not dispute that, even under his narrow interpretation, a POSITA would have recognized [Crosby's broadcaster ID, program segment ID, and the date and time program content was played] as identification data to identify specific instances of a media content.").

In its Final Written Decision, the Board agreed with Hyundai and Dr. Almeroth that because Ellis-2005 already taught using "identifiers and other information included in an in-band data stream on a music channel," a person of ordinary skill in the art "would have been motivated to incorporate Crosby's

teaching of a program segment ID and other information necessary to identify a program segment, as well as time and date of broadcast." Appx25-26. The Board also agreed with Dr. Almeroth that a person of ordinary skill in the art would have understood that Crosby's "unique program segment identifiers that are associated with specific instances of media content" could be "used to identify both track and vendor information for a given media content." Appx26 (quoting Appx831 (Almeroth Decl.) ¶ 123). Finally, the Board agreed again with Dr. Almeroth that incorporating Crosby's identification data into Ellis-2005 "'would have ensured identification of the exact instance of the program segment and ensured accurate fulfillment of the user's selection.'" Appx26 (quoting Appx834-835 ¶ 131).

The Board reiterated its determination that Crosby disclosed this limitation when separately discussing dependent claim 15:

> As explained above, we are persuaded by Petitioner's arguments that the PIDs and PID maps stored in memory in Ellis-2005 constitute "data enabling the identification of a specific instance of the first media content," ***and also*** that the combination of Ellis-2005 and Crosby (i.e., incorporating into Ellis-2005 *the use of program segment IDs or other information necessary to identify program segments as taught by Crosby)* teaches the limitation.

Appx46 (emphases added).

As noted above, Patent Owner asserts that the Board did not make a relevant finding as to Crosby. Therefore, Patent Owner made a decision not to address this issue. The only mention of it is a passing statement in a footnote that Crosby "does

not disclose the 'specific instance' data for the same reason that DeWeese does not." Appellant's Br. 38 n.3. Were this an attempt to appeal the Board's finding as to Crosby, it would not be sufficient. As this Court has admonished, arguments raised only in a footnote of an opening brief are "not properly raised . . . to warrant relief from this court." *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005); *see also Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 973 n.4 (Fed. Cir. 2006) (arguments made only in background section are waived). Additionally, even if this were sufficient to warrant consideration, DeWeese is an unrelated prior art reference at issue in Volkswagen's Petition in a different IPR proceeding. And Patent Owner's only argument about DeWeese in connection with the "specific instance" limitation was that DeWeese disclosed "program guide information" that "generically refers to the content." Appeal Br. at 33. Setting aside that the Board found that DeWeese discloses much more than generic program content (Appx79-80), Patent Owner's argument says nothing about how its attempts to distinguish DeWeese's program guide could be applied to the program segment IDs and date and time information taught by Crosby and relied upon by the Board. Appx25-26 (citing Appx223-224).

*In sum,* on appeal, the only error Patent Owner raises to the Board's conclusion that claim 9 is unpatentable is that Ellis-2005 fails to disclose the "specific instance" limitation. Patent Owner fails to challenge the Board's finding

that Crosby discloses that limitation. This forfeiture is sufficient to affirm the Board's finding that claim 9 is unpatentable over the Ellis-2005/Crosby combination. *In re Motupalli*, 791 F. App'x at 898 (because appellant "has waived arguments challenging numerous—and, with respect to several of the Proposed Claims, all—grounds for rejection of each of the Proposed Claims, we must affirm the PTAB's Decision"); *see also Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366, 1371 (Fed. Cir. 2020) (failure to "meaningfully" brief an issue on which the appellant needed to prevail to achieve its requested relief "alone would justify affirmance").

If the Court agrees, the Board's conclusion that claim 9 is unpatentable can be affirmed without reaching the second issue, whether Ellis-2005 also teaches this limitation.

## II. The Board correctly found that Ellis-2005 teaches the "specific instance" limitation of claim 9.

### A. The Board's finding that Ellis-2005 teaches the "specific instance" limitation is supported by substantial evidence and the proper reading of the claims.

Even if the Board did not find that Crosby teaches "data enabling the identification of a specific instance of the first media content" (the "specific instance" limitation), the Board correctly found that Ellis-2005 teaches that limitation. That finding is reviewed "for support by substantial evidence in the record." *Arendi*, 882 F.3d at 1133. "'Substantial evidence is something less than

the weight of the evidence but more than a mere scintilla of evidence,' meaning that 'it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (quoting *In re NuVasive, Inc.*, 842 F.3d 1376, 1379-80 (Fed. Cir. 2016)). "If two 'inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.'" *Elbit Sys.*, 881 F.3d at 1356 (quoting *In re Cree, Inc.*, 818 F.3d 694, 701 (Fed. Cir. 2016)). The Board's finding that Ellis-2005 also discloses the "specific instance" limitation meets this substantial evidence standard.

Hyundai argued that Ellis-2005 discloses user equipment with a first tuner 50 that receives media content along with music information identifying that content, and a second tuner 51 that can tune to another music channel "and obtain[] the in-band music information from that channel." Appx221-222; Appx832 (Almeroth Decl.) ¶ 127 (citing Appx1323 ¶ 8). And Hyundai further argued that the tuners receive packet identifiers with each track, which enable the system to distinguish between different tracks, and packet identifier maps that indicate "which PIDs correspond to which digital channels." Appx222-223 (citing Appx1325 ¶ 41). Hyundai's expert, Dr. Almeroth, testified that the packet identifiers and packet identifier maps teach "data enabling the identification of a

specific instance of the first media content" because they "identify where the data is within the stream and distinguish between different tracks." Appx1474 ¶ 48.

This interpretation of Ellis-2005 was largely undisputed below. Patent Owner stated in its Response that Ellis-2005's packet identifiers identify "which lane media is located within" and are used "corresponding to the given signal streams to identify the locations in a channel where data for each signal stream is located"; and packet identifier maps "identify the highway" and are "essentially a catalog of which packet identifiers are associated with each channel." Appx494-496.

Citing Ellis-2005's disclosure of packet identifiers "*identifying the track* that each packet belongs to" and data tracks "for obtaining in-band digital data displayed for users," the Board agreed that "Ellis-2005's PIDs and PID maps meet the relevant portions of the limitation 9[a] because they identify where the data is within the stream and distinguish between different tracks." Appx24-25 (citing Appx1325 ¶ 41; Appx1326 ¶ 46).

Patent Owner's primary argument below was that claim 9's limitation of "data enabling the identification of a specific instance of the first media content" has a narrower meaning, specifically that identifying a specific instance means *distinguishing* between two or more specific instances. Appx23. However, the Board agreed with Hyundai and Dr. Almeroth that the relevant portion of the

limitation merely requires "data *identifying* a specific instance of media content," as opposed to "*distinguishing* between two or more instances of the same media content," and thus correctly noted that the claim was broad enough to include identifying "either where the data for that media content is within the stream or by distinguishing between different 'tracks' in the stream." Appx24 (emphases added). The Board also cited testimony from Patent Owner's expert, who agreed that "the claim language does not recite that the system has to 'discretely identify' each instance of the first media content," and that the specification of the '081 Patent described that its "unique identifiers" could be used to determine a range of information, not necessarily "distinguishing between two or more instances of media content." Appx25 (citing Appx1507 (16:3-7) and Appx1969-1970 ¶ 33). Specifically, the Board quoted Patent Owner's expert's testimony that, according to the '081 Patent's specification, "a unique identifier can be used 'to determine the location, the user device, the time of transmittal, the program and/or media content in the first media signal, the available options for response to the user of the device, and/or other identifying characteristic information.'" Appx25 (quoting Appx1970 ¶ 33).

Thus, the Board's finding was supported by the claim language, the specification, the text of Ellis-2005, and the expert testimony of Dr. Almeroth.

On appeal, Patent Owner argues that "specific instance" means "specific occurrence," "identification of a specific instance" means "distinguishing between two or more instances of the same media content," and "data enabling" that identification must be "something akin to a unique serial number for a particular transmission to a particular user on a particular stream for that particular content." Appellant's Br. 38. In pressing this narrow reading of the claims, Patent Owner is effectively attempting to construe the claims on appeal, something it stated was not necessary below. Appx465 ("Petitioner asserts that no term requires explicit construction in order 'to resolve the particular grounds presented in the Petition.' . . . For the purposes of this proceeding, Patent Owner agrees."); Appx589 ("Patent Owner is not seeking to construe Element 9[a]. Rather, Patent Owner has explained and applied the plain and ordinary meaning of 'specific instance.' It is Petitioner who seeks modify the claim by reading out the team 'specific' from Element 9[a].").

Advancing a specific construction at this stage is too late. *See, e.g., In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (When an appellant "failed to present . . . claim construction arguments to the Board," those arguments are forfeited on appeal.) In any event, Patent Owner's arguments are not supported by the intrinsic evidence.

As to Patent Owner's argument that "instance" means "occurrence," Patent Owner contends that "if data identifies an *occurrence* . . . it will necessarily 'distinguish[] between two or more *instances* of the same media content.'" Appeal Br. at 32, 38 (emphasis added). But the word "occurrence" does not appear in the claims. The specification only uses the term "occurrence" in connection with inapplicable disclosures, such as that a display panel can change its display "upon the occurrence of some criteria such as a re-activation of the toggle button 462 or the passage of a certain amount of idle time." Appx165 (20:15-18).

Patent Owner's argument to construe "instance" as "occurrence" is based on extrinsic evidence in the form of online dictionary citations that were never disclosed to the Board and that post-date the priority date of the patent by over 15 years. Appeal Br. at 32. Such evidence should not be considered here. *See, e.g., Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1346 (Fed. Cir. 2003) (explaining that the Court "will rarely give weight to arguments that rely on sources brought forth for the first time on appeal," including dictionaries). Even if they were considered, extrinsic dictionary definitions cannot somehow displace the plain-and-ordinary meaning of the claim language. *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022) (cautioning that "[e]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims").

Additionally, the dictionary definitions that Patent Owner cites are not representative of definitions found in other dictionaries. For example, the Merriam-Webster dictionary has broader definitions of the word "instance": "a step, stage, or situation viewed as part of a process or series of events" or "an individual illustrative of a category or brought forward in support or disproof of a generalization." *Instance*, merriam-webster.com, https://www.merriam-webster.com/dictionary/instance (last visited Oct. 19, 2023).

As to Patent Owner's argument that "data enabling the *identification* of a specific instance of the first media content" means data enabling "*distinguishing* between two or more instances of the same media content" (Appellant's Br. 38) (emphasis added), the word "distinguishing" does not appear in the claims or the specification. As Dr. Almeroth testified, "there is nothing in Element 9[a], the specification, or the prosecution history relating to distinguishing multiple instances of the same content." Appx1457 ¶ 19. Patent Owner never disputed that, and as noted above its expert agreed that claim 9 does not recite that the system has to "discretely identify" each instance of the first media content. Appx1507 (16:3-7); Appx1970 ¶ 33. For this reason, Patent Owner's argument was rejected by the Board, which noted that it had "not been directed to anything in the record that would require restricting the claim term 'identification'" in this way. Appx24. The Board's finding that Hyundai's expert was more credible than Patent Owner's

expert was reasonable and should be accorded deference. *See, e.g., Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010) ("We defer to the Board's findings concerning the credibility of expert witnesses . . . unless no reasonable trier of fact could have done so.").

Finally, as to Patent Owner's argument that "data enabling" the "identification of a specific instance" must be "something akin to a unique serial number for a particular transmission to a particular user on a particular stream for that particular content" (Appellant's Br. 38, 40-41), this argument is newly raised on appeal and requires *entirely* rewriting the claim limitation at issue. But, again, neither the claims nor the specification mention a "unique serial number."[5] The specification discloses including an identifier in the media signals that *may* be "specific to the transmission of the first media signal 111 and/or the associated media signal 112," "tied to the specific instance of each media content segment conveyed via the first media signal 111," or "tied to the specific instance of each media content segment conveyed via the associated media signal 112." Appx161 (11:30-37). But it also explains that the identifier *may* be "not a unique identifier" at all (Appx161 (11:28-30)), and discloses embodiments where the

---

[5] Patent Owner's argument was never made below. While, out of an abundance of caution, Hyundai addresses this argument in its brief, the Court should disregard the argument. *In re Baxter*, 678 F.3d at 1362.

signal includes both "a unique ***and/or non-unique identifier*** 115" (Appx162 (13:31-34) (emphasis added)). Again, as the Board noted, Patent Owner's expert agreed that the claims do not require "that the system has to 'discretely identify' each instance of the first media content.'" Appx25 (quoting Appx1507 (16:3-7)).

*In sum*, there is no basis to narrow the claim language in the way suggested by Patent Owner and thus no basis to find that the Board lacked substantial evidence or otherwise erred as to claim 9.

### B. Even if the "specific instance" limitation were narrowed, both Crosby and Ellis-2005 teach the limitation.

As Hyundai argued in its Petition, Crosby discloses "unique program segment identifiers" that include "a program segment ID, the date and time of broadcast of the program segment, and the broadcaster ID for the broadcaster of the segment." Appx223 (citing Appx1189 (3:59-4:19); Appx1192 (9:14-19)). These unique program segment identifiers allow a user to "review information pertaining to the various program segments that have been selected" at a later time. *Id.* Accordingly, even if the claims were interpreted to require identification of "something akin to a unique serial number for a particular transmission to a particular user on a particular stream for that particular content" (Appellant's Br. 38), Patent Owner's narrowest proposed reading of the limitation, Crosby discloses that.

Similarly, while Ellis-2005 does not disclose "unique program segment identifiers" as Crosby does, it does disclose packet identifier maps' identification of "where the data is within the stream." Appx24. Patent Owner does not explain why identifying where the specific instance of media content is within the stream would not also meet its construction of identifying the specific "occurrence" of that media content. Additionally, Dr. Almeroth testified that Ellis-2005's packet identifiers "enable the system to distinguish between different tracks" (Appx1473-1474 ¶ 48), and the Board agreed (Appx24 (packet identifiers "distinguish between different tracks")). Patent Owner likewise does not explain why distinguishing between different tracks that each have the same media content would not also meet its construction of "distinguishing between two or more instances of the same media content." Appellant's Br. 38.

Accordingly, while Patent Owner's arguments to narrow the meaning of the "specific instance" limitation of claim 9 should be rejected, they nonetheless do not provide a basis to reverse the Board's conclusion that claim 9 is unpatentable. Thus, even if the Court adopts one or more of Patent Owner's constructions, it should affirm. *See Corning v. Fast Felt Corp.*, 873 F.3d 896, 901-903 (Fed. Cir. 2017) (holding that "it is not necessary or appropriate to remand for the Board to reassess the evidence in light of the correct claim construction" where "there is only one possible evidence-supported finding"); *Packers Plus Energy Servs. Inc. v.*

*Baker Hughes Oilfield Operations, LLC*, 773 F. App'x 1083, 1088 (Fed. Cir. 2019) (holding that the Court may consider alternative grounds for affirming the Board "where the issues raised do not require [the Court] to find facts in the first instance"). Alternatively, if the Court adopts Patent Owner's construction, the Court should remand for the Board to address Hyundai's arguments in the first instance.

## III. The Board's finding that Ellis-2005 in view of Crosby teaches dependent claim 15 is supported by substantial evidence.

Claim 15 depends from claim 9, and further recites that a computer server, in response to receiving the response message, "correlate[s] the response message to the second media content," such as an advertisement, "with the specific instance of the first media content," such as a song. Appx173 (36:24-27). The Board determined that Ellis-2005 disclosed this limitation, because it discloses a "merchandise request" (*i.e.*, the claimed "response message") to purchase merchandise "related to the music program that the user is listening to," which is sent to a merchandising facility that has computer hardware or software (*i.e.*, the claimed "server") configured to order, ship, and bill for the requested merchandise (*i.e.*, perform the claimed "correlation"). Appx1330-1331 ¶¶ 87-89.

Patent Owner appears to contend that Ellis-2005 does not disclose correlating the merchandise request with the "specific instance of the first media content," such as a song that the user is listening to. *See* Appeal Br. at 43 ("it is the

Board who has ***mentally*** 'correlated' a merchandise purchase as disclosed in Ellis-2005/Crosby with a specific instance of a first media content"). That assertion is unfounded.

As Dr. Almeroth testified, a person of ordinary skill in the art would have understood that Ellis-2005's system is configured to correlate the packet identifiers and/or packet identifier map information identifying a specific instance of the first media content (*e.g.*, a song that the user is listening to) with a merchandise purchase request relating to content on another channel that the user is viewing simultaneously (*i.e.*, the "response message" for the "second media content"). Appx1479 ¶ 58; *see also* Appx845 ¶ 149. Dr. Almeroth also testified that a person of ordinary skill in the art would have understood that this capability may be desirable, for example, if a user finds merchandise that it wishes to purchase while browsing music on other channels but wants to remember the song that they were listening to at the time they made the purchase request. Appx1479 ¶ 58. The Board agreed, finding Dr. Almeroth's testimony to be "consistent with the disclosures of Ellis-2005 and Crosby." Appx46.

Thus, the Board did not "mentally" correlate these elements, as Patent Owner contends. It interpreted the prior art from the perspective of a person of ordinary skill in the art, as required, supported by expert testimony. *See, e.g., Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (The obviousness

analysis requires analyzing "the prior art in context, taking account of 'demands known to the design community,' 'the background knowledge possessed by a person having ordinary skill in the art,' and 'the inferences and creative steps that a person of ordinary skill in the art would employ.'") (quoting *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 418 (2007)). Again, the Board's reliance on Dr. Almeroth's testimony should be accorded deference. *Yorkey*, 601 F.3d at 1284.

Patent Owner also mischaracterizes the Final Written Decision, claiming that its interpretations of the prior art for claim 15 are "inconsistent with its claim 9 assertions," and "consequently rife with error." Appeal Br. 42. They are not. Patent Owner *created* an "inconsistency" by misrepresenting the Board's earlier finding. The Board did not find that "the packet identifier" was "the specific instance," as Patent Owner contends, but that Ellis-2005's packet identifiers and packet identifier maps were "*data enabling the identification*" of the specific instance. *See* Appx46 ("As explained above, we are persuaded by Petitioner's arguments that the PIDs and PID maps stored in memory in Ellis-2005 constitute '*data enabling the identification* of a specific instance of the first media content . . .'") (emphasis added). This finding, initially made in connection with independent claim 9 (Appx24) and reiterated for dependent claim 15 (Appx46) is thus consistent and correct for the reasons noted above in Section II.A.

*In sum*, the Board's finding that the limitation added by dependent claim 15 is taught by Ellis-2005 is supported by substantial evidence and not based on any "mental correlation" or "inconsistency" in how it reads the claims.

## CONCLUSION

Because Patent Owner forfeited any challenge to the Board's finding that the Ellis-2005/Crosby combination renders claim 9 unpatentable, because the Board's findings under both Ellis-2005 and Crosby are supported by substantial evidence, and because Patent Owner has not pointed to any errors that would warrant reversal or remand, Hyundai respectfully requests that the Court affirm Board's conclusion that claims 9-11, 15, and 23 are unpatentable. If, however, the Court agrees with Patent Owner's constructions of claim 9's "specific instance" limitation, Hyundai requests that the Court find that Ellis-2005 in view of Crosby satisfies the adopted construction or, in the alternative, remand for the Board to determine whether the combination satisfies the construction. Finally, because the Board never addressed Hyundai's alternative grounds for unpatentability, if the Court reverses outright on either of the two issues on appeal, the Court should remand for the Board to address the non-adjudicated grounds in the first instance.

Respectfully submitted,

/s/ Coke Morgan Stewart

CAMERON W. WESTIN
O'MELVENY & MYERS LLP
610 NEWPORT CENTER DR., 17TH FLOOR
NEWPORT BEACH, CA 92677
(949) 823-6900

RYAN YAGURA
NICHOLAS WHILT
BENJAMIN HABER
CLARENCE ROWLAND
O'MELVENY & MYERS LLP
400 S. HOPE STREET, 18TH FLOOR
LOS ANGELES, CA 90071-2899
(213) 430-6000

CAITLIN P. HOGAN
O'MELVENY & MYERS LLP
TIMES SQUARE TOWER
7 TIMES SQUARE TOWER
NEW YORK, NY 10036
(212) 326-2000

WILLIAM FINK
COKE MORGAN STEWART
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

October 25, 2023

*Attorneys for Appellee Hyundai Motor America*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). This brief contains 8,906 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,

*/s/ Coke Morgan Stewart*

*Attorney for Appellee Hyundai Motor America*