**2023-1719 and 2023-1721**

# United States Court of Appeals for the Federal Circuit

STRATOSAUDIO, INC.,

*Appellant,*

– v. –

HYUNDAI MOTOR AMERICA,

*Appellee.*

STRATOSAUDIO, INC.,

*Appellant,*

– v. –

VOLKSWAGEN GROUP OF AMERICA, INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021-00721 and IPR2021-01267*

## REPLY BRIEF FOR APPELLANT

ROBERT GREENSPOON
WILLIAM W. FLACHSBART
DUNLAP BENNETT & LUDWIG PLLC
333 North Michigan Avenue,
Suite 2700
Chicago, Illinois 60601
(312) 551-9500
rgreenspoon@dbllawyers.com
wflachsbart@dbllawyers.com

*Counsel for Appellant*

NOVEMBER 15, 2023

COUNSEL PRESS, LLC (888) 277-3259

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION TO REPLY ..... 1

II. REPLY TO VOLKSWAGEN ..... 1

A. DeWeese Lacks the Claimed Output System ..... 1

B. DeWeese Lacks the Claimed "Specific Instance" ..... 7

C. DeWeese Lacks the Claimed "Discrete" Receipt ..... 13

III. REPLY TO HYUNDAI ..... 15

A. No "Finding" Exists That Crosby Teaches the "Specific Instance" Language of Claim 9, Thus No Appeal Argument is Forfeited ..... 15

B. Ellis-2005 Does Not Teach the "Specific Instance" Language of Claim 9 ..... 19

C. The Ellis-2005/Crosby Combination Does Not Teach Claim 15 ..... 22

IV. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*D'Agostino v. MasterCard Int'l, Inc.*,
844 F.3d 945 (Fed. Cir. 2016) .......................................................... 9, 13

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) .......................................................... 8, 9

*Intertainer, Inc. v. Hulu, LLC*,
660 Fed. Appx. 943 (Fed. Cir. 2016) .......................................................... 12

*Kelly v. United States*,
69 F.4th 887 (Fed. Cir. 2023) .......................................................... 8, 10

*Kyocera Senco Indus. Tools, Inc. v. ITC*,
2 F.4th 1369 (Fed. Cir. 2022) .......................................................... 11

*Overman v. Astrue*,
546 F.3d 456 (7th Cir. 2008) .......................................................... 8

*PersonalWeb Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) .......................................................... 8

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......................................................... 5, 21

*Takeda Pharma. Co v. Array BioPharma Inc.*,
720 Fed. Appx. 620 (Fed. Cir. 2017) .......................................................... 5, 6

*TQ Delta, LLC v. Cisco Sys.*,
942 F.3d 1352 (Fed. Cir. 2019) .......................................................... 22

## I. INTRODUCTION TO REPLY

Appellees fail to vindicate the Board's unpatentability conclusions for the challenged claims of U.S. Patent No. 8,166,081. Instead, Volkswagen and Hyundai each, in their respective separate responses, attempt a defense of Board decisions that arbitrarily and capriciously put proverbial square pegs (the prior art teachings) into round holes (the plain meaning scope of the claims). On Appellees' telling of the story, data that identifies a ***category*** of media content conveniently and miraculously identifies a "***specific instance***" of the broadcast of that media content. This Court exists to correct agency unpatentabililty decisions that embrace such magical thinking.

## II. REPLY TO VOLKSWAGEN

### A. DeWeese Lacks the Claimed Output System

Before addressing the "specific instance" issue, StratosAudio begins its Reply (as it began its Blue Brief) with the "output system" issue, because Judge Arbes's dissent accurately explains why Volkswagen should never have prevailed in its IPR against the '081 Patent. StratosAudio's opening brief explained that Volkswagen fatally never identified more than one configured "output" for DeWeese's supposed "first" and "second" "receiver modules." (Blue Br. 31, citing Appx130-131; *see also* Appx2333, identifying only DeWeese's "user television equipment 20" as the full

"output system" and its singular "display screen 200" as both first and second receiver module outputs). Judge Arbes, in dissent, explained that the plain meaning of the "output system" limitation requires two different outputs—each receiver module with its own output—adopting StratosAudio's position before the Board. (Appx127). He confirmed that DeWeese in this regard did not map onto the "output system" limitation in any way. (Appx131-132). Judge Arbes also noted how unclear it was that one of the alleged DeWeese modules (the DOCSIS modem) could possibly have an "output" for "presentation" at all—it's just a modem, not a display component. (Appx132). Here, in this instance, StratosAudio on appeal urges adoption of Judge Arbes's analysis, since it forecloses anticipation and renders moot the rest of the issues under DeWeese, obviating the remainder of StratosAudio's appeal over the DeWeese anticipation conclusion. (Blue Br. 30-31).

Volkswagen's response does not undermine Judge Arbes's conclusive and correct analysis. Volkswagen first argues that, as a matter of claim construction, the "output system" requires only a single output. (V. Red Br. 29-34). Volkswagen points out that the limitation refers to "an output." (V. Red Br. 30). Yet this assertion ignores that the limitation goes on to require what there is "an output" "of." The "of" is crucial. The "configured" nature

of the "output system" requires presentation on an output "of" the first "or" second receiver module—a disjunctive statement. Such items must be extant, or else they would not be named in the claim. The claim, after all, denotes how the "output system" is "configured."[1] StratosAudio conclusively showed that Volkswagen's construction rewrites the claim to permit reading on "an output of ~~the first~~ <u>a</u> receiver module ~~or the second receiver module~~." (Blue Br. 30). The Board may not permissibly rewrite a claim requiring two outputs into a claim requiring only one.

Volkswagen invokes the specification. It points to certain described devices "that do not have any output at all" as somehow proving that the "output system" only requires one output. (V. Red Br. 37, naming "transceivers."). Yet this is far afield. At most, Volkswagen points to an unclaimed embodiment, not a type of "output system" that might read on or support this particular language from claim 9, which concerns media ***presentation***. (*E.g.*, Appx132, Judge Arbes recounting portions of the record indicating the claimed output must present media to a user).

Volkswagen also tries to criticize StratosAudio's discussion of how the specification ***does*** support its contended scope, arguing that the disclosed

---

[1] Invocation of grammar's last antecedent / last referent rule (V. Red Br. 30) fails. The word "or" is not a modifier – it is conjunction. Indeed, it is a disjunctive conjunction.

configuration is "optional." (V. Red Br. 37-39). However optional, it is nonetheless disclosed. It is therefore germane as supporting StratosAudio's position. (*See also* Appx129, Judge Arbes citing the same specification discussion of "primary" and "auxiliary" devices).

Injecting further confusion, Volkswagen tries to criticize StratosAudio as having presented a waived "two device" construction. (V. Red Br 39-43). That is not so. Its construction is (and has always been) a "two output" construction. Volkswagen misunderstands StratosAudio's discussion of an example mapping of the claim (which may read on "two devices"). (Blue Br. 31, following the "must have . . . two extant outputs" argument with a "[f]or example" discussion of how it could map onto "device" specification examples of a mobile phone and a car radio). Explaining how a claim might read on something narrower than a claim construction does not equate with narrowing the claim construction itself. Volkswagen here also relies on an irrelevant fact: that in this particular example, the specification mentions a single device (*e.g.*, a smartphone) that can concurrently present output. (V. Red Br. 42). Again, this is not the relevant focus claimed in the instant "output system" language. Rather, as Judge Arbes noted (Appx129, *quoting* 15:43-47, 21:31-36 and 25:20-29), the specification ***does*** contain support examples for StratosAudio's contended scope, including an "if . . . then"

disclosure about delivering media to an ancillary instead of primary device if bandwidth requirements cannot be met.

Volkswagen finally offers an alternative path to affirmance if it loses on claim construction (as it should).[2] It argues for a factual finding never made at the Board, and thus foreclosed on appeal under the *Chenery* doctrine. *See Takeda Pharma. Co v. Array BioPharma Inc.*, 720 Fed. Appx. 620, 622-23 (Fed. Cir. 2017) (refusing to take up alternative anticipation ground because of the holding in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)). Namely, Volkswagen asserts that "DeWeese would still satisfy the limitation" if this Court adopts Judge Arbes's claim construction and scope.

---

[2] Volkswagen is not accurate to say that StratosAudio's opening brief did not dispute DeWeese disclosing the "output system" under the majority's construction. For example, Volkswagen is incorrect that "the Board found that DeWeese has two modules: (1) a set-top box . . . and (2) a DOCSIS modem . . . ." (V. Red Br. 43). As explained in the opening brief and in Section II.C. below, this "finding" does not exist because the Board "found" both modules to be the ***same*** DOCSIS modem. Judge Arbes questioned whether a DOCSIS modem can have any "output" in the claimed sense at all. (Appx132). This undermines any viable "output system" in DeWeese even under the Board majority's scope.

(V. Red Br. 46).[3] This is clearly wrong, as exemplified by Judge Arbes's own factual rejection under that scope. (Appx131-132). Nor does this Court take up fact finding anew under an alternative ground not addressed by the Board. *See Takeda*, *supra*.

To make this argument at all, Volkswagen impermissibly departs from its petition contentions. There, it named only "display screen 200" as a singular potential DeWeese "output" for the two relevant modules. (Appx2333). Now on appeal, it pleads for permission to assert that such screen "outputs media content received from [] both modules" and therefore, somehow, qualifies as two different outputs. (V. Red Br. 47). This is factually preposterous, in addition to being waived. Whether one characterizes "display screen 200" as a "logical" or "physical" output, it is still a single output—one item always treated in DeWeese as a singular thing or concept. In addition, as Judge Arbes reasoned, Volkswagen never supported under its preponderance burden that DeWeese's DOCSIS modem could be considered having an "output" at all in this "presentation" context

---

[3] Contrary to its statement at page 47, Volskwagen did not present this argument below. Its record citation at Appx2824 solely contains its answer to a Board supplemental briefing question about "where in the substantive papers you argued" that concurrent presentation happened on a "second receiver module" output. This record page shows that it did not argue that DeWeese contains the "output system" limitation under a "two output" construction.

(Appx132), foreclosing any factual finding that Volkswagen's contended "second receiver module" might provide even a separate "logical" output via "display screen 200."[4]

With Board errors so plainly apparent, as Judge Arbes's rare and meaningful dissent shows, this Court should reverse the anticipation finding under DeWeese.

### B. DeWeese Lacks the Claimed "Specific Instance"

If necessary to address, Volkswagen also cannot support affirmance under StratosAudio's second ground for appeal. Volkswagen failed to establish any proper basis for the Board holding that DeWeese discloses "data enabling the identification of a specific instance of the first media." (*See* Blue Br. 32-34). Though Volkswagen argues at length to try to vindicate the Board (*see* V. Red Br. 48-61), no quantity of words can justify the Board's analytical errors.

Contrary to Volkswagen critiquing StratosAudio for lacking a "cogent theory" on appeal (V. Red Br. 48), StratosAudio has been lucid and clear that the Board's error here involves both lack of substantial evidence and mistaken logical reasoning. All sides and the Board agree that the "specific

[4] As discussed in Section II.C. below, the Board's "finding" was actually that the DOCSIS modem served as both receiver modules, not that a "first" was the "set top box" and a "second" was the DOCSIS modem.

instance" claim construction is one of "plain meaning," and therefore StratosAudio does not appeal the express claim construction. But that does not insulate faulty fact finding or reasoning from this Court's review. To the contrary, the Administrative Procedure Act demands such review, whether for "substantial evidence," or for "arbitrary and capricious" action. *See Kelly v. United States*, 69 F.4th 887, 894-95 (Fed. Cir. 2023) (agency decision is arbitrary and capricious when decision maker "offer[s] an explanation for its decision that runs counter to the evidence before the agency," among other reasons) (citation omitted); *PersonalWeb Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992-93 (Fed. Cir. 2017) (finding Board's indication that reference disclosed claim limitation to be lacking where Board opinion "does not explicitly say, let alone explain" how claim-required features were present, after noting Board must articulate "logical and rational" reasons for its decision); *In re NuVasive*, 842 F.3d 1376, 1381-82 (Fed. Cir. 2016) (discussing APA review standards for review of Board decisions); *see also Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (noting that while substantial evidence review is "generous," it is "not entirely uncritical") (citation omitted).

For instance, if all sides agree that a patent claim requires a "red car," and the Board mapped such language onto a "green bicycle" after

determining "red car" receives plain meaning, this Court may still vindicate truth and logic through appellate decision making. A green bicycle is obviously not a red car, so this Court would reverse. Indeed when the Board has mishandled plain meaning in the past, this Court has not hesitated to find error, without overconcern about whether to label appellate correction under the rubric of fact review, versus claim construction, versus claim application. *D'Agostino v. MasterCard Int'l, Inc.*, 844 F.3d 945, 950 (Fed. Cir. 2016) ("The Board departed from or misapplied the above-stated clear meaning when—whether as a matter of claim construction or as a matter of application to [the prior art]—it concluded that the claim limitation covers [a situation as-described].").

Here, StratosAudio invoked appellate review standards under *In re NuVasive*, 842 F.3d at 1381-82. (Blue Br. 25, 27). Doing so, it pointed both to the absence of substantial evidence, and to illogical and irrational decision making. (Blue Br. 32-34, "Board's cavalier reading . . . read the term out of the claim," "rendered . . . language superfluous in its . . . application"). Volkswagen, however, misstates the issue on appeal as solely one of locating "substantial evidence" for a Board finding. (V. Red Br. 48). In its lengthy briefing, it fails to address the mishandled, unreasoned, illogical claim application. Thus, Volkswagen's argument notwithstanding, this aspect of

StratosAudio's appeal is not solely reviewed for "substantial evidence," but is also reviewed under APA standards that it must not run contrary to evidence before the Board, which would be unreasonable, illogical, arbitrary and capricious. *See Kelly*, 69 F.4th at 894-95. This Court must correct prejudicial and erroneous claim application not only when lacking substantial evidence, but also (since this is a review of an agency decision) when based on arbitrary and capricious reasoning.

Volkswagen's own appellate argument demonstrates the error. It states that DeWeese's "program guide data" fits the "specific instance" claim language because "the data apprises the user of particular television programs that will be broadcast at any given time." (V. Red Br. 49). This is akin to arguing a "green bicycle" fits the "red car" claim language because it is a bicycle and it is green. The conclusion does not follow from the proposition.

Again, Volkswagen argues that DeWeese's "program guide data" for upcoming or current television shows maps onto the language: "a first receiver module configured to receive at least a first media content and data enabling the identification of a specific instance of the first media content from a first broadcast medium." In the quoted words of the claim, a particular module receives particular content over a particular broadcast

medium. In this named context, the module receives data enabling identification of a ***specific instance*** of the first media content. It naturally follows, under the plain English meaning of such terms, that a mere category of content (such as DeWeese's "program guide data") will not suffice. If it did, the claim would say "data enabling identification of the first media content," without using the term "specific instance."

Volkswagen's response avoids acknowledging the illogical and faulty reasoning within the Board's claim application—its writing "specific instance" totally out of the claim. Its arguments instead debate whether StratosAudio's explanatory illustrations of what might properly map onto the language (*e.g.*, something with a "unique identifier" that is "akin to a serial number," something that is "dynamically determined," *etc*.) embodies a waived claim construction argument.[5] It also protests that more than just the

---

5 Volkswagen alludes to the Board supposedly "admonishing" StratosAudio to make all of its implicit claim construction arguments explicit. (V. Red Br. 51). What occurred was not, in fact, an admonishment but a request for a particular institution phase argument to be restated as a claim construction argument in the Patent Owner Response if that was actually intended; and this request did not relate to the "specific instance" issue now before this Court. (Appx383 n.6). In any case, Volkswagen does not dispute that StratosAudio did, in fact, explicitly argue its position on "specific instance" to the Board in terms of an "occurrence," and in terms of "dynamically determining" the data. This is the same scope argued on appeal. *See Kyocera Senco Indus. Tools, Inc. v. ITC*, 2 F.4th 1369, 1381-82 (Fed. Cir. 2022) (no waiver during appeal of "plain meaning" claim construction for party to

"program" is identified in the DeWeese data, since it also includes "the particular episode, the time it is played, and on what channel." (V. Red Br. 50, 55).

But logically, even all of this is still not data that can identify a "specific instance" of the media—the instance actually sent to that particular module at that particular moment and received from that particular broadcast medium. For example, demarking an episode's time-window (typically, 30 or 60 minutes) cannot distinguish the "Law and Order" media content sent to one Federal Circuit Judge from the "Law and Order" media content sent to another, even if they both are watching the same episode in the same moment on their respective devices. Volkswagen's telling of its story still maps a proverbial green bicycle illogically onto "red car" claim language.[6]

Volkswagen unwittingly supports StratosAudio elsewhere in its brief. In its discussion of the background, Volkswagen confirms that, in the '081 Patent's specification, the "identifying data (whatever its form) is received

---

press original scope urged at ITC); *Intertainer, Inc. v. Hulu, LLC*, 660 Fed. Appx. 943, 948 (Fed. Cir. 2016) (argument to the Federal Circuit on claim scope consistent with original claim scope argued to the Board does not give rise to waiver).

6 Volkswagen contends the DeWeese data is sent to the set-top box "continuously" and "in real time" (V. Red Br. 49). But the Board made no such finding. Volkswagen's citations are solely to the *ipse dixit* unadopted testimony of its expert, divorced from the actual disclosures of DeWeese.

by the device and used to search a database for various information about the associated media content such as '. . . ***the user device***. . . .'" (V. Red Br. 11, emphasis added). Volkswagen even agrees with StratosAudio (at Blue Br. 9-10) that the presence of the "specific instance" identifier brings benefits of targeted advertising and report generation. (V. Red Br. 12).[7] Data must enable identifying a "specific instance" of content, not just the type of content.

Since Volkswagen cannot justify the Board's misapplication of plain meaning (whether as findings lacking substantial evidence or arbitrary and capricious Board decision making), this Court should reverse on "specific instance."

### C. DeWeese Lacks the Claimed "Discrete" Receipt

Finally, if the Court needs to reach it, Volkswagen also fails to justify the Board's misapplication of the "discrete receipt" issue.

---

[7] Volkswagen complains of StratosAudio's "dynamically determined" and "unique serial number" explanations, maligning them as untimely or irrelevant attempts at claim construction. (V. Red Br. 55-61). That is an ironic position for a party who prevailed on a theory that ***it*** never expressly advanced as a claim construction. Volkswagen also misreads StratosAudio's arguments. They are illustrative explanations of what category of system might properly map onto the plain meaning of "data enabling the identification of a specific instance of the first media content from the first broadcast medium." *See D'Agostino*, 844 F.3d at 950 (offering up a new analogy during appeal not earlier made to the Board is permitted and is not presentation of a waived argument).

Here, Volkswagen overlooks that its expert resolved an ambiguity in how it presented its case. Dr. Williams had to admit that when he (and the Petition) contended that a "set top box" in DeWeese received the "first media content" (in the form of television programming), it was actually the DOCSIS modem piece within that box that did so. (Appx3726 ¶¶ 132, 133 (DOCSIS modem is within set top box 26, "receives television broadcasts" and communicates "to and from a . . . television distribution facility"); *see also* Appx108 (quoting admissions at deposition)). As Volkswagen admits, the Board credited this exact testimony, and accepted its expert's explanation. (V. Red Br. 62; *see also* Appx109-111). Since the Board went beyond mere neutral quotation of evidence and expressly accepted specific quoted expert-points as its own conclusions, these reflect Board findings that the DOCSIS modem in DeWeese handles both television signals (contended "first media content") and chat data (contended "second media content"). On appeal, Volkswagen ignores its expert's recitation of how the DOCSIS modem (inside the set top box) is the unit receiving television signals, and the Board's commensurate finding.

Volkswagen argues that StratosAudio's cited authorities do not apply. (V. Red Br. 65-69, attempting to distinguish citations at Blue Br. 35-36). However, Volkswagen's attempt to distinguish caselaw foreclosing mapping

one prior art element on two separate claim limitations fails. As Volkswagen acknowledges, when the claim recites the two limitations as "separate and distinct," a single prior art element cannot read on the two limitations. (*Accord* V. Red Br. 66). Here, the claim limitations recite the ultimate in separation from one another—"the second media content received discretely from the first media content"—in text at the end of the "second receiver module" limitation.

Incapable of contesting what the Board actually found (as expert admissions supported), and unable to distinguish StratosAudio's caselaw, Volkswagen presents no ***factual*** dispute that the single DOCSIS modem represents the same module in DeWeese receiving both the television signal media content and the chat signal media content. No substantial evidence thus exists that, in DeWeese, those media contents are received "discretely" as the claim language requires. The anticipation conclusion should be reversed for this reason as well.

## III. REPLY TO HYUNDAI

### A. No "Finding" Exists That Crosby Teaches the "Specific Instance" Language of Claim 9, Thus No Appeal Argument is Forfeited

Hyundai's main argument for affirmance on claim 9 is procedural and wrong. Hyundai asserts that the Board made a finding that StratosAudio

does not appeal—that supposedly Crosby teaches the limitation of claim 9 of "data enabling the identification of a specific instance of first media content." (H. Red Br. 23-28). But Hyundai fails to prove forfeiture.

Start with the fact that Hyundai makes its forfeiture assertion without quoting any Board language discussing claim 9's application to the Ellis-2005/Crosby combination. In fact, when the Board made any finding about what part of the prior art reads on the "specific instance" portion of claim 9, it expressly made the finding that PIDs and their maps in Ellis-2005 did so, not anything in Crosby:

> [After four pages of reproducing party arguments and counterarguments about "specific instance" language, Appx21-24:]
>
> Ellis-2005's PIDs and PID maps meet the relevant portions of the limitation 9[a] because they identify where the data is within the stream and distinguish between different tracks.

(Appx24-25). Having made this actual, express and clearly-beaconed finding, there would have been no purpose behind the Board making any like finding about Crosby. And it did not. Hyundai is incorrect that a Crosby finding exists, thus incorrect about StratosAudio forfeiting an argument.

The Board came closest when describing parts of Crosby as providing a motivation to combine—in effect, why a person of skill in the art might consider the two references together. (Appx25-26). In this regard, the Board

did state that a person of skill "would have been motivated to incorporate Crosby's teaching of a program segment ID and other information necessary to identify a program segment, as well as time and date of broadcast of the program segment," because it was "advantageous" to one of Ellis-2005's teachings. (Appx25-26). The Board quoted Hyundai's expert explanation of why one might "have been motivated to combine the teachings," including that doing so "would have ensured" certain results. (Appx26, quoting Hyundai's expert). But gluing two references together, by means of noting where they have commonalities, falls short of making a ***finding*** that one of the two references discloses ***a claim limitation***. The Board did so elsewhere with Ellis-2005, but not with Crosby.

Finally, Hyundai asserts that the Board "reiterated" its supposed Crosby-finding when separately discussing dependent claim 15. (H. Red Br. 26). At the outset, making findings about claim 15 does not retrospectively constitute administrative agency findings about claim 9. At worst, this might be an instance of the Board's inconsistent treatment between claims 9 and 15. In reality, though, Hyundai's quotation of the Board's claim 15 analysis does not show that the Board made a Crosby finding that Crosby disclosed the "specific instance" limitation.

In that quoted language during analysis of claim 15, the Board indicated its actual finding (while repeating the claim language) of what in the prior art constitutes the "specific instance" language from claim 9. The actual claim application finding was the same as with claim 9: PIDs and their maps from Ellis-2005. (Appx46). Then the Board went on simply to reiterate that "the combination . . . teaches the limitation"—an expected residual finding by this point, since the Board had already stated that Ellis-2005 does. This blandly shows that the Board's claim 15 analysis treated the references together as a combination—though it did reiterate the original basis for finding a ***motivation to combine***: "incorporating into Ellis-2005 *the use of program segment IDs or other information necessary to identify program segments as taught by Crosby*." (Appx46). Again, gluing two references together falls short of making a finding that one of the two references (*i.e.*, Crosby) discloses ***a particular claim limitation***.

Finally, even if this Court believed that the Board's bare mention of Crosby in the manner described above rose to the level of an implied Board finding that Crosby disclosed the "specific instance" limitation of claim 9, the Board's unclarity at minimum injected confusion into whether this finding exists. As mentioned, it used sharp and clear signaling language when making a finding mapping claim 9's "specific instance" language onto

Ellis-2005, but paired that with nothing similar when discussing Crosby. In this context, StratosAudio's footnote (Blue Br. 38 n.3) adequately preserved its appellate argument that no such finding can stand.

As stated in StratosAudio's footnote, the Crosby technology in this regard is no more informative about "specific instances" than the DeWeese technology. Just as DeWeese discloses "program guide information" (which Volkswagen indicates includes date and time information, V. Red Br. 50, 55), Crosby discloses mere program segment IDs and date and time information. They are essentially the same thing. Hyundai offers no principled reason why Crosby teaches anything more than DeWeese in this aspect, since it does not. (H. Red Br. 27). Hence, appellate arguments distinguishing DeWeese adequately distinguish Crosby as well, and preserve all issues to any extent that StratosAudio needed to do so.

### B. Ellis-2005 Does Not Teach the "Specific Instance" Language of Claim 9

Turning to the actual issue on appeal of the actual finding made by the Board, Hyundai fails to defend the Board's arbitrary and capricious finding (and one lacking substantial evidence) that Ellis-2005's PIDs and PID maps disclose "data enabling the identification of a specific instance of the first media content." For similar reasons why the Board misapplied plain meaning to render an illogical decision as to DeWeese disclosing this

limitation, the Board was at least as illogical as to Ellis-2005. Hyundai, like Volkswagen, effectively maps a green bicycle onto "red car" claim language. The conclusion Hyundai wants simply does not follow from the factual propositions Hyundai makes.

Here, Hyundai admits that all Ellis-2005 discloses in this regard is "packet identifiers identifying the track that each packet belongs to and data tracks for obtaining in-band digital data displayed for users [which] identify where the data is within the stream and distinguish between different tracks." (H. Red Br. 30, cleaned up). Hyundai finds fault with StratosAudio pointing out the mismatch between this disclosure and the claim language on appeal. (H. Red Br. 32). Calling StratosAudio's plain meaning analysis a "narrow reading of the claims," Hyundai mimics Volkswagen's approach of falsely (and ironically) accusing StratosAudio of attempting untimely or unsupported claim construction arguments on appeal. (H. Red Br. 32-36). But the issue is not claim interpretation. The issue is a faulty plain meaning analysis that arbitrarily and capriciously maps something onto the claims that bears no relationship to its plain meaning, causing such "finding" to lack substantial evidence.

As discussed at length above with regard to Volkswagen's argument, StratosAudio's plain meaning analysis is neither untimely nor unwarranted.

StratosAudio's opening brief, in a portion effectively ignored by Hyundai, demonstrates why the reference does not disclose the limitation. (Blue Br. 39-40). PIDs and PID maps only identify the relative positional track organization of the content where media content is transmitted in Ellis-2005's system. Using StratosAudio's analogy, the prior art shows lanes of a road, not the specific cars traveling at a particular time. Hyundai does not actually disagree. Thus, StratosAudio's point is essentially unrebutted on appeal. To read this Ellis-2005 technology onto "specific instance" language in claim 9 "is either legally erroneous, unsupported by substantial evidence, the product of arbitrary and capricious reasoning, or all of the above." (Blue Br. 40).[8]

For the foregoing reasons, the Court should reverse the unpatentability decision for claim 9 based on the Ellis-2005/Crosby combination.

---

8 As Volkswagen does, Hyundai seeks fact finding under the proper plain meaning analysis for the first time on appeal. (H. Red Br. 36-38). *Chenery* principles and the APA foreclose this request. In any case, Hyundai's argument makes no sense, because it still identifies nothing in Ellis-2005 or Crosby that can constitute data enabling identification of a "specific instance" of (for example) a song, as opposed to a category of instances, such as a location where their data will travel or the time slots in which they are expected to (but may never) arrive.

### C. The Ellis-2005/Crosby Combination Does Not Teach Claim 15

Finally, Hyundai's responsive argument on claim 15 demonstrates why this Court should at least grant StratosAudio's appeal as to that claim. Rather than cite to this Court any aspect of Ellis-2005 that discloses a database backend correlation as claimed, Hyundai merely cites its *ipse dixit* expert testimony. Crucially, Hyundai's briefing reinforces that no part of the actual Ellis-2005 prior art discloses the computer server configuration as claimed. If that were so, Hyundai would quote where the reference makes such disclosure, rather than call in its expert to fill informational gaps. Conclusory expert opinions are not, and have never been, substantial evidence that can support a Board unpatentability decision. *See TQ Delta, LLC v. Cisco Sys.*, 942 F.3d 1352, 1358-59 (Fed. Cir. 2019).

Hyundai essentially leaves undisputed that the reference itself does not disclose, at a server, correlating the response message to the second media content with the specific instance of the first media content. Hyundai does not dispute that, absent such teaching in the reference, its claim 15 assertion must fail. As explained in StratosAudio's opening brief, Ellis-2005 discloses nothing more than garden variety e-commerce, making it a product of the Board's imagination to ingrain specific and optional server features that (coincidentally) look just like those in StratosAudio's '081 patent. (Blue

Br. 41-43). This was hindsight treatment by the Board. The Board incorrectly imagined StratosAudio's teachings lurking behind the words of the reference, whereas even a close reading of the prior art document reveals nothing about the optional server processes of claim 15.

## IV. CONCLUSION

For the foregoing reasons and those in StratosAudio's opening brief, this Court should reverse the Board's Final Written Decisions, and at least remand for further proceedings consistent with its opinion.

Respectfully submitted,

*/s/ Robert Greenspoon*
Robert Greenspoon
William W. Flachsbart
Dunlap Bennett & Ludwig PLLC
333 North Michigan Avenue,
Suite 2700
Chicago, Illinois 60601
(312) 551-9500
rgreenspoon@dbllawyers.com
wflachsbart@dbllawyers.com

*Counsel for Appellant*

NOVEMBER 15, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1719 & 2023-1721

**Short Case Caption:** StratosAudio, Inc. v. Hyundai Motor America

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4,980 words.

☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 11/15/2023

Signature: /s/ Robert P. Greenspoon

Name: /s/ Robert P. Greenspoon

Save for Filing